635 A.2d 143

Gary CENTOLANZA, Glen Centolanza, Gail Danner, Jr., and Jennie Centolanza, t/a Ccubed, and Allentown Diagnostic & Repair Center, Inc., Appellants,

v.

LEHIGH VALLEY DAIRIES, INC., Beatrice Cheese, Inc., and Atlantic Processing, Inc., trading as Lehigh Farms, Appellees.

Superior Court of Pennsylvania.

Argued April 14, 1993.

Filed Oct. 26, 1993.

Reargument Denied Jan. 10, 1994.

464

Edward Rubin, Lansdale, for appellants.

Nicholas M. Kouletsis, Philadelphia, for Lehigh Valley Dairies, appellee.

Sharon Barnes, Allentown, for Atlantic Processing, appellee.

Before DEL SOLE, HUDOCK and HOFFMAN, JJ.

HUDOCK, Judge.

The facts underlying this appeal, as stated by the trial court, are as follows:

Plaintiffs own an automotive repair center located on approximately one and one-half acres of land in Whitehall Township, Lehigh County, Pennsylvania. The defendant, Lehigh Valley Dairies, Inc., (hereinafter LVDI), owns and operates a dairy processing plant directly upgradient from the plaintiffs' property. The defendant, Atlantic Processing, Inc., (hereinafter API), was the former owner of this plant. In April, 1984, API sold a portion of the facility to defendant, Beatrice Cheese, Inc., (hereinafter BCI), and later sold the remainder to defendant LVDI. An 8,000 gallon underground storage tank containing No. 6 fuel oil is located on the BCI property and four 10,000 gallon underground storage tanks also containing No. 6 fuel oil are located on LVDI's property.

Plaintiffs allege that in the summer of 1986, waste water began seeping onto the plaintiffs' property and, the following summer, No. 6 fuel oil, in addition to the waste water, was discharged onto their property. Plaintiffs allege that at least one of the aforesaid tanks and/or connecting pipes

leaked, causing contamination to plaintiffs' property which required extensive cleanup and remedial action.

Trial Court Opinion at pp. 3–4.

The trial court entered an order which reads as follows:

Now, this 28th day of September, 1992, upon consideration of the Motion for Partial Summary Judgment on behalf of Lehigh Valley Dairies, Inc., the Motion for Summary Judgment or Partial Summary Judgment on behalf of Atlantic Processing, Inc., the Motion for Summary Judgment on behalf of Beatrice Cheese, Inc., the written briefs and oral arguments of counsel and for the reasons expressed in the accompanying opinion;

IT IS ORDERED that the Motion for Partial Summary Judgment of the Defendant, Lehigh Valley Dairies, Inc., is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of the Defendant, Atlantic Processing, Inc., is DENIED; the Motion for Partial Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of the Defendant, Beatrice Cheese, Inc., is DENIED.

Appellants raise the following issues in their appeal:

A. Whether Appellants, as private citizens, may recover monetary damages from the Appellees under the Pennsylvania Storage Tank and Spill Prevention Act, Pa.Stat.Ann. tit. 35, §§ 6021.101–.2104 (Purdon 1992).[1]

B. Whether the lower court erred in dismissing the request for equitable remedies under the Pennsylvania Storage Tank and Spill Prevention Act.

C. Whether the Appellants, as private citizens, may utilize the legal presumption found in § 6021.1311(a) of the Pennsylvania Storage Tank and Spill Prevention Act.

1. 1989, July 6, P.L. 169, No. 32, § 101, effective in 30 days.

D. Whether a violation of the Pennsylvania Storage Tank and Spill Prevention Act constitutes negligence per se.

Appellants' Brief at p. 3.

We must first determine whether Appellants have appealed from a final order, because

[i]t is fundamental,

that an appeal will lie only from a final order unless otherwise permitted by statute. A final order is one which ends the litigation or, alternatively, disposes of the entire case.... Conversely, an order is interlocutory and not final unless it effectively puts the litigant out of court....

In ascertaining what is a final appealable order ... we must look beyond the technical effect of the adjudication to its practical ramifications.... The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications.

*Praisner v. Stocker,* 313 Pa.Super. 332, 336–37, 459 A.2d 1255, 1258 (1983) (citations and quotations omitted). Generally, because our courts frown upon piecemeal litigation, "an order dismissing some but not all counts of a multi-count complaint is interlocutory and not appealable." *Id.* However, where separate and distinct causes of action have been joined in one complaint, a judgment entered on one or more of those causes of action is final and appealable because it terminates the litigation upon a separate cause of action and puts the litigant "out of court" on that cause of action. *Id.,* at 341–42, 459 A.2d at 1260. ... On the other hand, an order dismissing one or more counts of a multi-count complaint which merely sets forth alternate theories of recovery is interlocutory and not appealable because the plaintiff can still proceed to a determination on an alternate theory. *Id.,* at 313 Pa.Super. at 341, 459 A.2d at 1260.

*Dorohovich v. West American Ins. Co.,* 403 Pa.Super. 412, 416–417, 589 A.2d 252, 254–255 (1991). In *Dorohovich,* we also stated:

An order is final if it puts the aggrieved party out of court "on all theories of recovery asserted against a given defen-

468

dant for a given loss." *Sweener v. First Baptist Church,* 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987). Alternate theories of recovery are different means to recover the same damages or relief for a single harm. *Garofolo v. Shah,* 400 Pa.Super. 456, 583 A.2d 1205 (1990) (en banc). Separate causes of action seek different relief for different harms. *Id.* As such, if a litigant seeks recovery under alternate theories for a given loss, an order dismissing one of those theories is not appealable. *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990) (en banc); *Danko,* [*Development Corp. v. Econocast Corp.,* 369 Pa.Super. 120, 534 A.2d 1108 (1987) ]. If a litigant, however, requests different relief for different harms, an order disposing of one of those requests is an appealable order. *Motheral, supra. See also Praisner,* 313 Pa.Super. at 341, 459 A.2d at 1260 ("the dismissal of a count alleging damages for breach of an express contract is not appealable if an alternate count seeking to recover the same damages based on quantum meruit remains undecided").

*Dorohovich,* 403 Pa.Super. at 417, 589 A.2d at 255.

With this standard in mind, we look at the claims which Appellants have made in their complaint. The trial court summarized the claims as follows:

Plaintiffs' complaint sets forth the following claims for relief: (1) liability under the Hazardous Sites Clean-up Act, 35 Pa.C.S.A. § 6020.101, *et seq.* [this claim withdrawn]; (2) strict liability for abnormally dangerous/ultra-hazardous activity [this claim withdrawn]; (3) negligence and gross negligence; (4) private and public nuisance; (5) inconvenience and discomfort; (6) loss of use and enjoyment of their property; (7) diminution of the value of their [property]; (8) liability under the Storage Tank and Spill Prevention Act, 35 Pa.S.A. § 6021.101, *et seq.*

Trial Court Opinion at p. 4.

We note initially that items 5, 6, and 7 above are items of damage, not causes of action, and we will not consider them in our discussion at this point. We also note that the Storage

Tank and Spill Prevention Act (STSPA) provides for the recovery of attorney's fees, § 6021.1305(f), and costs of abatement of a nuisance, § 6021.1304(b). Recovery of attorney's fees is not otherwise available in a common law action for negligence or nuisance. *See J.C. Snavely & Sons, Inc. v. Web M & E, Inc.,* 406 Pa.Super. 271, 594 A.2d 333 (1991), *alloc. den.,* 529 Pa. 650, 602 A.2d 860. Therefore, because attorney's fees are an additional item of damage, the damages recoverable under a claim involving the STSPA are different from those recoverable under the other claims made by Appellants. The order granting partial summary judgment is therefore a final order and appealable.[2]

We must next determine whether Appellants are entitled to bring an action under the STSPA. Appellees claim that there can be no private action under the statute. If there is no private action under the statute, then the order granting partial summary judgment was proper on that basis. The determination of whether a private action exists under the STSPA is the linchpin in resolving all of the issues raised by Appellants and is an issue of first impression in our Commonwealth.

The STSPA states in 35 P.S. § 6021.102(b):

**(b) Declaration.**—The General Assembly declares these storage tank releases to be a threat to the public health and safety of this Commonwealth and hereby exercises the power of the Commonwealth to prevent the occurrence of these releases through the establishment of a regulatory scheme for the storage of regulated substances in new and existing storage tanks and to provide liability for damages sustained within this Commonwealth as a result of a release and to require prompt cleanup and removal of such pollution and released regulated substances.

2. We note that Pa.R.A.P. 341, 42 Pa.C.S. was amended effective July 6, 1992. This amendment redefined the meaning of a final appealable order. Our present action was commenced prior to the effective date of this amendment and is therefore not governed by it.

The STSPA regulates owners and operators of storage tanks by requiring permits and fees and dictating proper uses. 35 P.S. §§ 6021.501—6021.506. Furthermore:

A violation of this act or of any order or regulation adopted by the department or of permits issued by the department shall constitute a public nuisance. The department shall have the authority to order any person causing a public nuisance to abate the public nuisance. In addition, the department or any Commonwealth agency which undertakes to abate a public nuisance may recover the costs of abatement in an action in equity brought before any court of competent jurisdiction. Whenever such nuisance shall be maintained or continued contrary to this act or such orders, regulations or permits the same may be abatable in the manner provided by this act. Any person who causes such public nuisance shall be liable for the cost of abatement.

35 P.S. § 6021.1304. Likewise, the Commonwealth (by the Attorney General, General Counsel, any district attorney, or municipality solicitor) may bring an action to enforce the act. 35 P.S. § 6021.1305(a).

35 P.S. § 6021.1305(c) is the section which Appellants claim provides for private causes of action. It reads as follows:

(c) **Private actions.**—Except as provided in subsection (d) [relating to notice to Department of Environmental Resources] any person having an interest which is or may be affected *may commence a civil action on his behalf to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act by any owner, operator, landowner or occupier alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act.* Except where 42 Pa.C.S. (relating to judiciary and judicial procedure) requires otherwise, the courts of common pleas shall have jurisdiction of such actions, and venue in such actions shall be as set forth in the Rules of Civil Procedure concerning civil actions in assumpsit. No such action may be commenced if the department has commenced and is diligently prosecuting a civil action in a court of the United States or

of the Commonwealth or is in litigation before the Environmental Hearing Board to require the alleged violator to comply with this act or any rule, regulation, order or permit issued pursuant to this act, but, in any such action in a court of the United States or of the Commonwealth, any person having or representing an interest which is or may be adversely affected may intervene as a matter of right without posting bond.

35 P.S. § 6021.1305(c) (emphasis added). Finally, § 6021.-1305(f) reads in pertinent part as follows:

(f) **Fees and costs.**—The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

When asked to construe a statute, we are guided by the principles of statutory construction and legislative intent as follows:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921. We are also guided by certain presumptions in ascertaining legislative intent:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

(5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S. § 1922.

In reviewing a summary judgment order, our standard of review is as follows:

Rule 1035 of the Pennsylvania Rules of Civil Procedure provides that summary judgment is to be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). The moving party has the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In deciding whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party. The court's responsibility is to determine whether a genuine issue of material fact exists; the court may not resolve such an issue. Moreover, the

court should not enter summary judgment unless the case is free from doubt.

*Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983) (citations omitted).

With these principles in mind, we turn to the language of the STSPA. The act provides that owners and operators of storage tanks must comply with the act in their use of those tanks. They must demonstrate financial responsibility for releases from those tanks. In doing so, they must demonstrate their ability to pay for costs of abatement, costs of litigation, and damages for personal injury and/or property damage. The act provides that the Commonwealth, through various persons, may bring an action in court to enforce the act and recover the costs of doing so. Likewise, when the Commonwealth has not brought suit, or pursued compliance with the act, a private person may bring an action to do so.

 Appellees argue, in addition to their claim that there is no private action available under the act, that Appellants may not recover damages under the act, but can only sue to obtain compliance with the act. Appellees contend that compliance with the act means forcing corrective action to be taken, taking corrective action itself, and obtaining the costs of abatement. We agree with this interpretation of the act.[3]

3. We note that Appellees and the trial court rely on judicial interpretation of the Clean Streams Law (CSL), 35 P.S. § 691.1 *et seq.*, in support of their position that a private cause of action does not exist under the STSPA.

We find that reliance on another statute is only warranted when the plain language of the statute in question is ambiguous. Because we find that the STSPA clearly provides for a private cause of action, and is therefore not ambiguous, it was improper for the court to look to another statute in ascertaining the legislature's intent.

Even were we to find that the language of the STSPA was ambiguous, the use of the CSL would yield the same result. The trial court considered the CSL to contain very similar language to the STSPA, and Appellees point to the following language:

(c) Except as provided in subsection (e), any person having an interest which is or may be adversely affected may commence a civil action *on his own behalf* to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act *against the department* where there is alleged a failure of the department to perform any act which is not discretionary with the department or

Compliance with the act includes, but is not limited to, compelling owners and operators to: register their tanks, § 6021.503; pay annual registration fees, § 6021.501(a)(1); obtain permits and pay fees for those permits, § 6021.504; demonstrate financial responsibility for releases, § 6021.701; take corrective action after an order of DER, § 6021.1302; pay costs of abatement to DER or authorized third parties to do so, § 6021.1302(b); comply with regulations for use and operation of the tanks, § 6021.501; and not to cause a public nuisance, § 6021.1304.

Appellant claims as items of damages the following:

WHEREFORE, Plaintiff respectfully requests the Court to provide the following relief:

A. Award judgment in favor of Plaintiff and against Defendant under this cause of action averred by Plaintiff;

B. Award Plaintiff equitable and legal damages including, but not limited to, removal costs, cleanup costs, engineering fees, costs of determining the costs of assessing injury, source of contamination, costs for monitoring and testing, costs for treatment, costs of long-term plans to remediate, devaluation damages, interest and attorneys [sic] fees and costs, in an amount exceeding $10,000 or this Court's jurisdictional minimums; whichever amount is higher;

C. Award Plaintiff exemplary damages against Defendant in such an amount that it would act as a deterrent to Defendant and others from the future commission of like offenses and wrongs; and

D. Provide such other legal and equitable relief as this Court deems just and proper.

against any other person alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act.

35 P.S. § 691.601(c) (emphasis added). Clearly, the language quoted above differs from the language of the STSPA because it provides for a private action against DER, but does not mention an action against the alleged violator(s). We find, therefore, the CSL to be clearly distinguishable from our present case and would not find that it controls our case even had we found the STSPA language to be ambiguous.

Appellants' Petition to Amend Complaint Against Defendant, Atlantic Processing, Inc. t/a Lehigh Valley Farms at pp. 4–5, 7.

The DER may order a violator to take corrective action. Corrective action is defined as follows:

(1) Containing, assessing or investigating a release.

(2) Removing a release or any material affected by a release.

(3) Taking measures to prevent, mitigate, abate or remedy releases, pollution and potential for pollution, nuisances, and damages to the public health, safety or welfare, including, but not limited to, waters of the Commonwealth, including surface water and groundwater, public and private property, shorelines, beaches, water columns and bottom sediments, soils and other affected property, including wildlife and other natural resources.

(4) Taking actions to prevent, abate, mitigate or respond to a violation of this act that threatens public health or the environment.

(5) Temporarily or permanently relocating residents, providing alternative water supplies or undertaking an exposure assessment.

(6) Does not include the cost of routine inspections, routine investigations and permit activities not associated with a release.

35 Pa.S. § 6021.103. Compliance with the act necessarily includes taking corrective action. Corrective action is a measure which DER may order a violator to take, the costs of which the violator must bear. Therefore we hold that the measures and recoveries available to DER are equally available in a private action.

Because we find that the STSPA does provide for a private cause of action to compel compliance with the act, the trial court erred in granting partial summary judgment by striking the claim of Appellants for recovery under the act. Appellees were not entitled to partial summary judgment as a matter of law.

■ Next, we address whether Appellants are entitled to use the statutory presumption created in the STSPA. The pertinent section reads as follows:

(a) **General rule.**—Except as provided in subsection (b) [relating to defenses], it shall be presumed as a rebuttable presumption of law in civil and administrative proceedings that a person who owns or operates an aboveground or underground storage tank shall be liable, without proof of fault, negligence or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the site of a storage tank containing or which contained a regulated substance of the type which caused the damage, contamination or pollution. Such presumption may be overcome by clear and convincing evidence that the person so charged did not contribute to the damage, contamination or pollution.

35 P.S. § 6021.1311(a). Appellees and the trial court argue that the legislature did not intend to permit private persons to use this presumption, but rather, the presumption is available only to the DER.

We agree that the language of this particular section does not specifically authorize the use of the presumption to be used in private actions. We find, however, that an action authorized by § 6021.1305(c), by a private person, necessarily involves a civil proceeding. Similarly, § 6021.1311 above explains how courts should evaluate the evidence presented in such a civil proceeding. We find that because an action by a private person is no different than one brought by the Commonwealth under the act, the presumption is equally available in a private action. Appellees and the trial court cite *Fleck v. Timmons*, 374 Pa.Super. 417, 543 A.2d 148 (1988), in support of the position that the presumption should not be applied to a private cause of action. We find that *Fleck* is clearly distinguishable.

In *Fleck*, we were called upon to construe provisions of the Solid Waste Management Act (SWMA), 35 P.S. § 6018.101 *et seq.* Specifically, the court relied upon § 6018.611 in support of its decision. Initially, we note that the SWMA, like the

CSL, does not provide for a private cause of action. Therefore, private persons may only intervene under the SWMA in actions brought by the DER. Because there is no underlying right to bring a private action, we held that no presumption would be available for actions involving the SWMA. Although the language in SWMA is quite similar to the language in § 6021.1311 of STSPA, we find that *Fleck* is distinguishable. Appellants may use the statutory presumption as provided in § 6021.1311.

■■ Finally, we address whether Appellants are entitled to use proof of a violation of the STSPA as evidence of negligence per se. The theory of negligence per se has been defined as follows:

Conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances, either because it is *in violation of a statute* or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty of it. As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes.

Black's Law Dictionary, 5th Ed, 1979 (emphasis added). The Restatement (Second) of Torts has addressed this in § 286 as follows:

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 286 (1965). Conversely, Appellees and the trial court rely on Restatement (Second) of Torts § 288 in support of their position that a violation of the STSPA does not constitute evidence of negligence per se. It reads as follows:

The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

(a) to protect the interests of the state or any subdivision of it as such, or

(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

(d) to protect a class of persons other than the one whose interests are invaded, or

(e) to protect another interest than the one invaded, or

(f) to protect against other harm than that which has resulted, or

(g) to protect against any other hazards than that from which the harm has resulted.

Restatement (Second) of Torts § 288 (1965). Section 6021.-1304 of the STSPA reads in part:

A violation of this act or of any order or regulation adopted by the department or of permits issued by the department shall constitute a public nuisance.

35 P.S. § 6021.1304.

Section 6021.1304 clearly establishes violations of the STSPA as public nuisances thereby prescribing the standard of conduct through a legislative enactment. We find that

because private actions are authorized under the act, the STSPA contemplated the protection of the individual, as well as the public at large. The statute declares that storage tank releases are a threat to public health and safety. 35 P.S. § 6021.102(b). In addition to permitting the Commonwealth to commence suit to abate the public nuisance created by a violation, the legislature recognized the need to protect individuals harmed by the releases and, therefore, provided for their private actions.[4]

Because the STSPA differs from the CSL and SWMA, as we have discussed previously, cases interpreting those other acts are not binding on our determination. The legislature clearly intended to treat storage tank releases in a different manner than the harms caused by these other acts. We find that Restatement (Second) of Torts § 286 applies in these circumstances, and, therefore, find that a violation of the STSPA can serve as evidence in a claim of negligence per se.

Because we find that the trial court erred in granting the partial summary judgments, by striking the eighth cause of action in Appellants' complaint, we reverse and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded. Jurisdiction relinquished.

---

4. The trial court based its decision on this issue primarily on its earlier finding that the STSPA did not provide a private cause of action. As we have stated previously, this was error. Therefore, the trial court's analysis of this fourth issue is flawed because it is based on an improper premise.