658 A.2d 336

Gary CENTOLANZA, Glenn Centolanza, Gail Danner, Jr. and
Jennie Centolanza trading as Ccubed and Allentown
Diagnostic and Repair Center, Inc.

v.

LEHIGH VALLEY DAIRIES, INC. Beatrice Cheese, Inc. and
Atlantic Processing, Inc., trading as Lehigh Farms.

Appeal of LEHIGH VALLEY DAIRIES,
INC. and Atlantic Processing, Inc.

Supreme Court of Pennsylvania.

Argued Dec. 8, 1994.

Decided May 16, 1995.

Reargument Denied July 13, 1995.

Nicholas M. Kouletsis, James P. Kimmel, Jr., Philadelphia, for Lehigh Valley Dairies, Inc.

Thomas C. Sadler, Scott R. Lipson, Allentown, for Atlantic Processing, Inc., trading as Lehigh Farms.

Brendan K. Collins, Philadelphia, for amicus, American Petroleum Institute and Pa. Chamber of Business and Industry.

Edward Rubin, Steven A. Hann, Lansdale, for Centolanzas.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

MONTEMURO, Justice.

This case concerns whether private citizens may obtain an order under the Pennsylvania Storage Tank and Spill Prevention Act (STSPA)[1] directing storage tank owners to make payments to them for anticipated oil contamination cleanup costs and diminution in the value of property, and whether private citizens are entitled to use the statutory presumptions provided in the STSPA. Because we find that a private citizen may avail himself of the remedies conferred on the Department of Environmental Resources, payments for anticipated costs and property value diminution are available. Additionally, private citizens may take advantage of the statutory presumptions set out in the STSPA. Accordingly, we affirm the holding of the Superior Court. The facts of this appeal are uncomplicated. Appellees, the Centolanzas, own an automotive repair center located on one and one-half acres in Whitehall Township, Lehigh County. Appellant, Lehigh Valley Dairies, Inc. (LVD), owns and operates a dairy processing plant directly upgradient from the Centolanzas' property. Appellant, Atlantic Processing, Inc. (API), was the former owner of this plant. In April, 1984, API sold a portion of its facility to Beatrice Cheese, Inc. (BCI). Later, API sold the remainder to LVD. An 8,000 gallon underground storage tank containing No. 6 fuel oil is located on the BCI property and four 10,000 gallon underground storage tanks containing No. 6 fuel oil are located on the LVD property.

1. 35 P.S. §§ 6021.101–.2104.

The Centolanzas allege that in the summer of 1986, waste water seeped onto their property and in the summer of 1987, No. 6 fuel oil, in addition to the waste water, was discharged onto their property. The Centolanzas claim that at least one of the Appellants' tanks and/or connecting pipes leaked, causing contamination to Appellees' property which required extensive cleanup and remedial action.

Suit was instituted by the Centolanzas in the Court of Common Pleas of Lehigh County against LVD, API, and BCI.[2] Appellees' complaint enumerated the following claims for relief: (1) liability under the Hazardous Sites Cleanup Act, 35 Pa.C.S. §§ 6020.101–.1305; (2) strict liability for abnormally dangerous/ultra hazardous activity; (3) negligence and gross negligence; (4) private and public nuisance; (5) inconvenience and discomfort; (6) loss of use and enjoyment of their property; (7) diminution of the value of their property; and (8) liability under the Storage Tank and Spill Prevention Act, 35 P.S. §§ 6021.101–.2104. (Plaintiffs' Second Amendment to Complaint, filed Nov. 22, 1989.) Both the claim under the Hazardous Sites Clean-up Act and the strict liability claim were withdrawn. Moreover, the trial court correctly noted that the claims for inconvenience, loss of use and enjoyment, and diminution of value of their property are claims for damages and not causes of action. LVD and API moved for summary judgment as to the Centolanzas' claim under the Storage Tank and Spill Prevention Act. On September 28, 1992, the Honorable Thomas A. Wallitsch of the Court of Common Pleas of Lehigh County granted Appellants' motion.

The Centolanzas appealed the trial court ruling to the Superior Court. That court reversed and remanded the matter on October 26, 1993. *Centolanza v. Lehigh Valley Dairies, Inc.*, 430 Pa.Super. 463, 635 A.2d 143 (1993).

LVD and API filed applications with the Superior Court for reargument *en banc*. On January 10, 1994, the Superior Court denied their applications. From this denial, Appellants

---

2. The Centolanzas settled with BCI. Accordingly, BCI is no longer part of this appeal.

filed petitions for allowance of appeal with this Court.[3]   We granted the petition.   The following two issues are before this court:

I.   May private parties obtain an order under the Pennsylvania STSPA directing storage tank owners to make payments to them for anticipated oil contamination cleanup costs and diminution in value of property when the STSPA does not require such payments and the Pennsylvania Department of Environmental Resources has neither directed nor authorized "corrective action" to cleanup the contamination?[4]

II.   Whether the STSPA may be interpreted to grant private citizens the ability to proceed against a neighboring property owner within 2500 feet, armed with a presumption of liability and the statutory ability to collect attorney's fees, and not require that DER first make a determination that the corrective action sought by the citizen is warranted?

██    In addition to these issues, Appellants question whether we have jurisdiction to hear this matter because the Centolanzas have failed to join the Pennsylvania Department of Environmental Resources (DER) as an indispensable party pursuant to *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372 (1994).   Because the issue of subject matter jurisdic-

**3.**   Both Appellants and Appellees assert in their briefs that LVD filed an application to amend its petition on May 11, 1994.   However, a review conducted by the Supreme Court Prothonotary for the Middle District failed to reveal any such application.

**4.**   In its petition for allowance of appeal to this Court, LVD phrases this first issue as:

Whether failure of a tank owner to take corrective action by cleaning up a neighboring property constitutes a violation of the STSPA when the DER has not ordered the tank owner to take corrective action nor made any finding relative to the appropriateness of corrective action?

The Centolanzas argue that the new issue advanced by Appellants is substantively different from the question posed in LVD's petition and should not be reviewed by this Court.

We agree that Appellants have altered the focus of the issue.   Nevertheless, the change is not fundamental.   Only questions set forth in the petition, or fairly comprised therein, will ordinarily be considered by the court in the event an appeal is allowed.   Pa.R.A.P. 1115(a)(3).   Because the issue now posited by LVD is part of the original issue raised in the petition for allowance of appeal, it is permissible.

tion goes to our ability to review this matter, we will address it first. *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988) (absence of an indispensable party goes to a court's jurisdiction and prevents it from granting relief).

In *CRY*, a group of citizens filed suit against an industrial waste treatment and storage facility and DER alleging violations of various state environmental laws. The Court of Common Pleas of Westmoreland County held that DER was an indispensable party and DER was joined as an involuntary plaintiff. An appeal was taken to the Commonwealth Court which reversed. Subsequently, an appeal was taken to this Court.

In *CRY*, we held that consideration of an indispensable party involves at least the following:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*CRY*, 536 Pa. at 468–9, 640 A.2d at 375 (quoting *Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 481, 431 A.2d 953, 956 (1981)). With those considerations in mind, we referred to the nature of the claim and the relief sought. *Id.* at 469, 640 A.2d at 376. The complainant in *CRY* alleged that DER engaged in misfeasance and malfeasance. In addition, CRY made two demands for relief in which DER would be involved. First, CRY requested that DER forbear from issuing further permits to Mill Service. Second, CRY sought the appointment of a trustee of natural resources for the site.

We then applied the *Mechanicsburg* criteria to the facts in *CRY*. We held that DER does have a right or interest related to the claim. DER is the agency responsible for regulating harmful pollution of the kind alleged in this matter. In addition, we held that DER's regulatory activity and authority may be affected by an adjudication in *CRY*. Furthermore, we

held that DER's interest was essential to the merits of the issue. Because DER's regulatory activity may be affected by any order entered in *CRY*, and because compliance with that order may require the cooperation of DER, we held that it was an essential party.

Although similar in some respects, the instant case is distinguishable from *CRY*. First, we hold that DER does have a right or interest. DER is the agency responsible for regulating harmful pollution of the kind alleged in this matter. Second, we hold that DER's regulatory activity and authority may be affected by an adjudication in *Centolanza*. However, DER's interest is not essential to the merits of the issue. In this matter, the Centolanzas have not alleged that the Commonwealth has failed to halt, cease, or abate the nuisance. Additionally, the Centolanzas did not request any type of relief directly involving the Commonwealth. Finally, in *CRY* we found that DER's cooperation in the matter was unlikely because in its brief, DER insisted that a court was powerless to order certain relief. That is not the situation in this case. Accordingly, we hold that DER is not an indispensable party in this action and that this Court has jurisdiction to resolve this appeal.

■ The first question posed by Appellants is whether an order directing storage tank owners to make payments to a private party for anticipated oil contamination cleanup costs and for diminution in the value of property is available under the STSPA. When reviewing a statute, we are guided by the principles set out in the Statutory Construction Act, 1 P.S. §§ 1501–1991.[5] The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 P.S. § 1921(a). While the object of statutory interpretation is ascertaining and effectuating the intention of the General Assembly, every statute shall be construed to give effect to all of its provisions. *Id.* Notwithstanding, when the words of the statute are clear and free from all ambiguity, we will not disregard the letter of the law under the pretext of

5. 1972, Dec. 6, P.L. 1339, No. 290, § 3, imd. effective.

pursuing its spirit. 1 P.S. § 1921(b). In construing a statute, headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in construction. 1 P.S. § 1924.

Section 6021.1305 of the STSPA, entitled "Suits to abate nuisances and restrain violations," provides for private actions in subsection (c). That subsection reads as follows:

Except as provided in subsection (d),[6] any person having an interest which is or may be affected may commence a civil action on his behalf to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act by any owner, operator, landowner or occupier alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act. Except where 42 Pa.C.S. (relating to judiciary and judicial procedure) requires otherwise, the courts of common pleas shall have jurisdiction of such actions and venue in such actions shall be as set forth in the Rules of Civil Procedure concerning civil actions in assumpsit. No such action may be commenced if the department has commenced and is diligently prosecuting a civil action in a court of the United States or of the Commonwealth or is in litigation before the Environmental Hearing Board to require the alleged violator to comply with this act or any rule, regulation, order or permit issued pursuant to this act, but, in any such action in a court of the United States or of the Commonwealth, any person having or representing an interest which is or may be adversely affected may intervene as a matter of right without posting bond.

35 P.S. § 6021.1305. It is not clear from the statute whether a private party may obtain the costs of abating a nuisance from a storage tank owner in private actions under the STSPA. The statute indicates that the private plaintiff may bring a civil action to "compel compliance" with the STSPA. *Id.* The phrase "compel compliance" is not defined in the definitional section of the STSPA. *See* 35 P.S. § 6021.103.

**6.** Subsection (d) provides for notice, in writing, of the violation to the department and to any alleged violator. 35 P.S. § 6021.1305.

Absent a definition in the statute, statutes are presumed to employ words in their popular and plain everyday sense, and the popular meaning of such words must prevail. *Harris-Walsh, Inc. v. Borough of Dickson City,* 420 Pa. 259, 216 A.2d 329 (1966).

Unfortunately, the common usage of the words "compel" and "compliance" are equally unhelpful. According to *Webster's Ninth New Collegiate Dictionary* "compel" means "to drive or urge forcefully or irresistibly; to cause to do or occur by overwhelming pressure." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 268 (1986). "Compliance" means "the act or process of complying to a desire, demand, or proposal or to coercion; conformity in fulfilling official requirements; a disposition to yield to others." *Id.* at 269. The meanings of these words do not offer us guidance in determining private citizens' recovery under the STSPA. Hence, we must look to the purpose of the statute and the goals of the General Assembly.

The STSPA is a remedial statute. This Court has held that ambiguous language of a remedial act must be liberally construed. *See In re Huested's Estate,* 403 Pa. 185, 169 A.2d 57 (1961); *Farmers Nat. Bank & Trust Co. of Reading to Use of Adams v. Berks County Real Estate Co.,* 333 Pa. 390, 5 A.2d 94 (1939). According to the Pennsylvania General Assembly, storage tank releases are a threat to the public health and safety of this Commonwealth. 35 P.S. § 6021.102(b). To protect the public health and safety, the General Assembly established a regulatory scheme for the storage of regulated substances in new and existing storage tanks. *Id.* Moreover, the legislature provided liability for damages sustained within the Commonwealth as a result of a release. *Id.* Finally, the legislation requires prompt cleanup and removal of such pollution and released regulated substances. *Id.*

We are unable to interpret definitively the intention of the legislature in passing Section 6021.1305. Therefore, we await clarification of the language to guide our future action. Until we receive direction from the General Assembly, we must construe Section 6021.1305 liberally. This construction will

give the section teeth to realize the goals of the General Assembly. Private citizens may take action when DER has failed to act; thus promoting the goal of prompt cleanup and removal of spills. Therefore, we affirm the Superior Court and hold that under Section 6021.1305, a private cause of action may be brought to collect costs for cleanup and diminution in property value.

Next we turn to whether the STSPA may be interpreted to grant private citizens the ability to proceed against a neighboring property owner armed with a presumption of liability. The pertinent section of the STSPA reads as follows:

> Except as provided in subsection (b) [7], it shall be presumed as a rebuttable presumption of law in civil and administrative proceedings that a person who owns or operates an above ground or underground storage tank shall be liable, without proof of fault, negligence or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the site of a storage tank containing or which contained a regulated substance of the type which caused the damage, contamination or pollution. Such presumption may be overcome by clear and convincing evidence that the person so charged did not contribute to the damage, contamination or pollution.

35 P.S. § 6021.1311(a). Appellants argue that this presumption is available only to DER.

This section neither expressly authorizes the use of the presumption in private actions, nor expressly limits the use of the presumption to a particular plaintiff. We agree with the Superior Court, however, that because a private action brought under the STSPA is no different than one brought by the Commonwealth, the presumption available to the Commonwealth is equally available in a private action. *Centolanza v. Lehigh Valley Dairies,* 430 Pa.Super. 463, 476, 635 A.2d 143, 149 (1993). In *Centolanza,* Judge Hudock reasoned that because an action authorized by Section 6021.1305(c) necessarily involves a civil proceeding, and because Section 6021.1311

---

7. Subsection (b) relates to defenses.

explains how courts should evaluate evidence presented in civil proceedings, the presumption may be used in civil proceedings instituted by private citizens. *Id.* We find this reasoning persuasive.

Appellants assert that the Superior Court holding in *Fleck v. Timmons,* 374 Pa.Super. 417, 543 A.2d 148 (1988), supports the position that the statutory presumption is unavailable to private citizens. In *Fleck* the Superior Court examined provisions of the Solid Waste Management Act (SWMA).[8] In support of its decision, the Superior Court relied upon Section 6018.611. That section reads:

> It shall be presumed as a rebuttable presumption of law that a person or municipality which stores, treats, or disposes of hazardous waste shall be liable, without proof of fault, negligence, or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the area where hazardous waste activities have been carried out. Such presumption may be overcome by clear and convincing evidence that the person or municipality so charged did not contribute to the damage, contamination, or pollution.

35 P.S. § 6018.611. The court in *Fleck* held that because there was no underlying right to bring a private action, the legal presumption in the SWMA was never meant to be used in legal actions instituted by private citizens. The STSPA differs from the SWMA in that it specifically provides for private actions in Section 6021.1305(c).

Accordingly, we affirm the order of the Superior Court reversing the trial court's grant of Summary Judgment.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., is sitting by designation.

---

8. 35 P.S. §§ 6018.101–.1003.