## Mistick PBT v. Liss

C.P. of Allegheny County, no. GD94-19256.

*Stanley R. Geary, P. Jerome Richey* and *James F. Glunt,* for plaintiffs.

*Randall G. Hurst* and *Michael D. Reed,* for defendant Liss.

*Thomas G. Michalek,* for defendants Barrera.

*Eric L. Horne,* for defendants Marsonek.

*Scott A. Gould, Curtis N. Stambaugh* and *Kandice J. Kerwin,* for defendants Handee Marts Inc.

*David G. Ries, James M. Ginocchi* and *Kevin P. Allen,* for defendant board.

*Joseph E. Linehan,* for defendants Latterman.

WETTICK JR., *J.,* May 29, 2002—The summary judgment motions filed by defendants raise the issue of whether claims which plaintiffs have raised under the Pennsylvania Storage Tank and Spill Prevention Act, 35 P.S. §6021.101 et seq., are governed by a two-year limitation period governing torts (42 Pa.C.S. §5524(7)) or a six-year "catchall" limitation period (42 Pa.C.S. §5527). This issue has never been addressed by any Pennsylvania appellate court.

Section 5524(7)'s two-year limitation period applies to any "action or proceeding to recover damages for injury to person or property which is founded on negli-

gent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass." Section 5527's six-year catchall limitation period applies to "[a]ny civil action or proceeding which is [not] subject to another limitation period specified in this subchapter."

The two-year limitation period will apply if each of the claims that may be raised in a private action under the Storage Tank Act resembles an action to recover damages for injury to person or property founded on negligent, intentional, or otherwise tortious conduct or other actions or proceedings sounding in trespass. However, if all claims that may be raised under this legislation cannot be characterized in this fashion, the six-year catchall limitation period will apply.

In *Gabriel v. O'Hara*, 368 Pa. Super. 383, 534 A.2d 488 (1987), the trial court ruled that claims for violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1—201-9.2, are subject to the two-year limitation period of section 5524(7) governing tortious conduct, including fraud or deceit, because claims under the Consumer Protection Law essentially involve misconduct constituting fraud or deceit. The Superior Court reversed. It ruled that the controlling issue is not whether particular claims sound in tort but rather whether each claim that may be brought under the Consumer Protection Law resembles a claim for fraud or deceit.

The court stated that unfair trade practices which the Consumer Protection Law describes include what might be analogized to misappropriation, trademark infringement, disparagement, false advertisement, fraud, breach

of contract, and breach of warranty. Thus, causes of action based on the Consumer Protection Law are governed by a six-year limitation period.

"We are unable, therefore, to characterize all the multifarious claims that may be brought under the [Consumer Protection Law] as 'fraud' or 'deceit.' Instead, the [Consumer Protection Law] creates a civil action which is separate and distinct from appellants' other causes of action and for which the legislature provided no limitations period. The language of section 5527(6) [now section 5527] of the Judicial Code, however, is clear and unambiguous . . . as to what period of limitation shall apply in such instances . . . ." *Id.* at 396, 534 A.2d at 495. (footnote omitted)

Private actions under the Storage Tank Act are governed by 35 P.S. §6021.1305(c) which reads, in relevant part, as follows: "[A]ny person having an interest which is or may be affected may commence a civil action on his behalf to compel compliance with this Act or any rule, regulation, order, or permit issued pursuant to this Act by any owner, operator, landowner or occupier alleged to be in violation of any provision of this Act or any rule, regulation, order or permit issued pursuant to the Act." In *Centolanza v. Lehigh Valley Dairies Inc.,* 540 Pa. 398, 658 A.2d 336 (1995), the Pennsylvania Supreme Court ruled that under this provision a property owner may bring a private action against a neighboring property owner responsible for the condition of the plaintiff's property to recover payments for anticipated oil contamination cleanup costs and diminution in the value of property.

It is defendants' position that private claims under section 1305(c) are the equivalent of common-law causes

of action for nuisance and trespass. The only difference is that the statutory action creates presumptions of liability and permits the award of counsel fees. Thus, any private action under section 1305 is essentially a tort action governed by the two-year limitation period of 42 Pa.C.S. §5524(7). In support of this position, defendants cite section 1304 of the Act (35 P.S. §6921.1304) which provides that a violation of this Act or any order or regulation adopted by the department or of permits issued by the department shall constitute a public nuisance which the department shall have the authority to order any person causing the public nuisance to abate, and section 1305 (35 P.S. §6021.1305) which is headed "Suits to abate nuisances and restrain violations" and which provides in section 1305(a) that "Any activity or condition declared by this Act to be a nuisance, or which is otherwise in violation of this Act, shall be abatable in the manner provided by law or equity for the abatement of public nuisances."[1]

As I previously discussed, the controlling issue is whether each claim that may be brought under section 1304(c) can be characterized as an action or proceeding (1) "to recover damages for injury to person or property" and (2) "founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass." The wrongdoing upon which the claims raised in *Centolanza* are based—a property owner's breach of its duty not to engage in conduct on its property that interferes with a neighboring owner's

---

1. However, section 1305(c) provides that venue in civil actions "shall be as set forth in the Rules of Civil Procedure concerning civil actions *in assumpsit*." (emphasis added)

use of its property—constitutes a private nuisance under the common law. Thus, I would likely agree with defendants that statutory claims under section 1304(c) should be characterized as actions sounding in trespass to recover damages to injury to property if the only claims that may be raised in any private action brought under the Storage Tank Act are those involving a defendant's use of its property in a manner that interferes with the use and enjoyment of another property.

However, other claims that may be raised under section 1305(c) cannot be characterized as actions or proceedings "to recover damages for injury to person or property" or as actions or proceedings "founded on negligent, intentional or otherwise tortious conduct or any other action or proceeding sounding in trespass."

The Superior Court opinion in *Centolanza v. Lehigh Valley Dairies Inc.*, 430 Pa. Super. 463, 635 A.2d 143 (1993) (which was affirmed by the Pennsylvania Supreme Court), concluded that "the measures and recoveries available to DER are equally available in a private action." *Id.* at 475, 635 A.2d at 149. Thus, a private cause of action may address the following corrective actions:

"Compliance with the Act includes, but is not limited to, compelling owners and operators to: register their tanks, §6021.503; pay annual registration fees, §6021.501(a)(1); obtain permits and pay fees for those permits, §6021.504; demonstrate financial responsibility for releases, §6021.701; take corrective action after an order of DER, §6021.1302; pay costs of abatement to DER or authorized third parties to do so, §6021.1302(b); comply with regulations for use and operation of the tanks, §6021.501; and not to cause a public nuisance, §6021.1304." *Id.* at 474, 635 A.2d at 147-48.

In *Juniata Valley Bank v. Martin Oil Co.,* 736 A.2d 650 (Pa. Super. 1999), Juniata purchased property that had been previously owned by Martin Oil, a remote prior owner (*i.e.,* Juniata did not acquire the property from Martin). Martin Oil had stored petroleum products in underground storage tanks throughout its occupancy of the property. After purchasing the property, Juniata discovered the presence of an underground storage tank and petroleum hydrocarbon contamination in the soil and underground water. Juniata brought an action against Martin that included a claim under the Storage Tank Act to recover the costs of abatement and the diminution in the value of the property. Juniata alleged that Martin's operations and excavation activities on the property caused the contamination.

The initial issue that the court addressed in *Juniata Valley Bank* was whether a current owner may sue a remote prior owner of the same property for losses sustained because of contamination with petroleum products due to the prior owner's failure to comply with the Storage Tank Act. The court ruled that since a private action may be brought by any person having an interest which may be affected against any owner, operator, landowner, or occupier alleged to have been in violation of the Act, the bank had standing, derived from its ownership of the property, to bring this lawsuit.

The claims that Juniata was permitted to pursue cannot be characterized as claims "founded on negligent, intentional, or otherwise tortious conduct . . . [or] sounding in trespass." 42 Pa.C.S. §5524(7). At common law, a property owner had no duty to subsequent owners to use its land in a manner that did not diminish the value of

that land.[2] Common-law causes of action do not impose any restrictions on an owner's use of its property for the protection of subsequent owners or impose any liability based on the manner in which the prior owner used its property (other than disclosure requirements imposed under tort law governing fraud and misrepresentation).[3] In the absence of fraud or contractual provisions to the contrary, a subsequent purchaser takes the property as is.

According to *Gabriel v. O'Hara, supra* at 396, 534 A.2d at 495, the controlling issue is whether or not the Storage Tank Act "creates a civil action which is sepa-

---

2. Restatement (Second) of Torts §840A, Continuing liability after transfer of land, cmt.c states:

"If the vendor or lessor has himself created on the land a condition that results in a nuisance, he cannot escape liability for the continuation of the nuisance by selling or leasing the land to another. . . . [H]is responsibility *toward those outside of his land* is such that he is not free to terminate his liability to them for the condition that he has himself caused or concealed, by passing the land itself on to a third person." (emphasis added)

3. Under the common law, a person is subject to liability to another for trespass if this person intentionally intrudes on the land of the other. Restatement (Second) of Torts §158. A private nuisance, on the other hand, is a nontrespassory invasion of another's interest in the use and enjoyment of other private or public property. Restatement (Second) of Torts §821D; *Diffenderfer v. Staner,* 722 A.2d 1103, 1109-10 (Pa. Super. 1998). A public nuisance is an unreasonable interference with a right common to the general public. Restatement (Second) of Torts §821B, where an individual must have "suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference," Restatement (Second) of Torts §821C; *City of Erie v. Stelmack,* 780 A.2d 824, 827 (Pa. Commw. 2001) (public nuisance is an activity "that annoys the whole community in general, and not merely some particular person, and *produces no greater injury to one person than to another . . . .*" (emphasis added)).

rate and distinct" from common-law tort actions. In *Phila-delphia Electric Co. v. Hercules Inc.,* 762 F.2d 303 (3d Cir. 1985), the court considered whether any common-law causes of action were available to a property owner which had incurred expenses in excess of $335,000 to partially abate an environmental condition on the property created by a remote prior owner. The property owner sued a successor of the remote prior owner to recover the costs incurred in partially abating the condition and other losses. The claims were based on theories of private and public nuisance. The jury returned a verdict in favor of the plaintiff. The court of appeals reversed.

The court ruled that a vendor cannot be held liable to a remote vendee on a private nuisance theory because the doctrine is limited to a property owner's responsibility not to engage in conduct that interferes with the use and enjoyment of neighboring land. "Where, as here, the rule of *caveat emptor* applies, allowing a vendee a cause of action for private nuisance for conditions existing on the land transferred—where there has been no fraudulent concealment—would in effect negate the market's allocations of resources and risks, and subject vendors who may have originally sold their land at appropriately discounted prices to unbargained-for liability to remote vendees." *Id.* at 314-15.

The court ruled that recovery could not be based on the doctrine of public nuisance because of the requirement for standing to sue for public nuisance that the harm be of a different kind from that suffered by the general public. The court stated that this requires a showing that the subsequent purchaser suffer a "particular damage" in the exercise of a right common to the general public.

In this case, the subsequent purchaser had only been specially harmed in the exercise of its private property rights over the site. Consequently, the doctrine did not apply.

Also, see *Diffenderfer v. Staner, supra,* 722 A.2d at 1110 (Court followed the ruling in *Philadelphia Electric Co. v. Hercules Inc., supra,* "precluding private nuisance claims by subsequent owners or tenants for conditions existing on the very land transferred"); *Andritz Sprout-Bauer Inc. v. Beazer East Inc.,* 174 F.R.D. 609 (M.D. Pa. 1997) (former owner is not liable to subsequent owner for contamination cleanup costs incurred in connection with two sites which it previously owned under theories of private and public nuisance); *Cross Oil Co. v. Phillips Petroleum Company,* 944 F. Supp. 787 (E.D. Mo. 1996) (a party has no duty to a subsequent owner to maintain its property in a certain condition; the law of negligence cannot be expanded to allow a current owner of property to seek recovery against a prior landowner for a condition created on property by the prior owner); *Truck Components Inc. v. K-H Corp., supra,* 1995 WL 692541 at 12 (current owner cannot maintain a nuisance claim, private or public, against a prior owner); and *Hanlin Group Inc. v. International Minerals & Chemical Corp.,* 759 F. Supp. 925, 935-37 (D. Me. 1990) (private nuisance action cannot be brought because doctrine does not apply to successive landowners; public nuisance claim is dismissed because impairment of value of plaintiff's property is not a special injury in the exercise of right common to the general public).

But, see *Tosco Corp. v. Koch Industries Inc.,* 216 F.3d 886, 895-96 (10th Cir. 2000) (former owner that incurred remediation expenses was awarded a portion of the re-

sponse costs under a public nuisance claim against another, prior former owner);[4] and *Westwood Pharmaceuticals Inc. v. National Fuel Gas Distribution Corp.,* 737 F. Supp. 1272, 1281-82 (W.D.N.Y. 1990) (subsequent owner can bring public nuisance action against prior owner to recover response costs).

Because the purposes of the Storage Tank Act and obligations that it imposes on prior owners of property exceed the purposes of tort law and the obligations imposed through tort law, the scope of the claims that may be raised under the Storage Tank Act exceed the scope of 42 Pa.C.S. §5524(7) which applies only to an action "to recover damages for injury to person or property" which is founded "on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass." The words of 42 Pa.C.S. §5524(7) are words of common usage that should be given their ordinary meaning: The clause "damages for injury to persons or property" ordinarily means injury to third persons or property of another. Tortious conduct ordinarily refers to conduct injuring the property of a third person. The language of section 5524(7) does not reach an owner's use of its land in a manner that interferes with a subsequent owner's use of the same land.

Possibly, the subsequent owner's claim against the prior owner may be characterized as an indemnification claim. The subsequent owner may claim that the law imposes an absolute duty on the prior owner to restore the land and permits the subsequent owner to seek reimbursement from a prior owner whose use of the land

---

4. The court also ruled that the two-year statute of limitations governing private nuisance claims does not cover public nuisance claims.

caused the condition. However, such an indemnification claim is not a tort claim because the subsequent owner and prior owner are not joint tort-feasors. This would be a statutory indemnification claim; there is no language in section 5524 covering a statutory indemnification claim.

As I mentioned at the beginning of this opinion, the Pennsylvania appellate courts have never addressed the issue of what limitations period covers suits under section 1305 of the Storage Tank Act. The issue, however, has been considered in two common pleas court opinions and two federal court rulings.

In *Ziegler v. Lynn,* 33 D.&C.4th 143 (Lehigh Cty. 1996), and in *Buttzville Corp. v. Gulf Oil Corp.,* 25 D.&C.4th 172 (Lancaster Cty. 1995), the courts ruled that claims under the Storage Tank Act are governed by a 20-year limitation period. In *Two Rivers Terminal L.P. v. Chevron USA Inc.,* 96 F. Supp.2d 432 (M.D. Pa. 2000), the court applied the two-year limitation period based on the application of 42 Pa.C.S. §5524(7). In *Shooster v. Amoco Oil Co.,* 2001 W.L. 882971 (E.D. Pa. 2001), the court, without discussion, followed the *Two Rivers Terminal* ruling.

In this case, plaintiffs are not contending that their claims under the Storage Tank Act are governed by a 20-year limitation period. They apparently agree with the ruling of the court in *Two Rivers Terminal* that the 20-year limitation period set forth in 35 P.S. §6021.1314 refers only to proceedings instituted by the Commonwealth to recover civil or criminal penalties.

*Two Rivers Terminal* involved a fact situation very similar to the fact situation in the present case. Chevron

had constructed a terminal that had six aboveground storage tanks and two underground storage tanks. It sold its assets to Cumberland Farms in 1986; Cumberland Farms never stored petroleum products at the terminal. In 1991, Cumberland Farms sold the terminal to Two Rivers. After Two Rivers became aware of contamination, it filed a complaint that included claims against Chevron under the Storage Tank Act. The court ruled that the private action can best be described as a tort claim akin to a common-law claim for nuisance:

"We agree with the defendant's position that a private Tank Act claim is essentially a tort. To begin with, the Tank Act's citizen-suit provision authorizes what can best be described as a tort claim akin to a common-law claim for nuisance; the Tank Act recognizes that a violation of the Act can be abated as a nuisance. See 35 P.S. §6021.1305(a). Additionally, the factual underpinnings of a private claim under section 1305(c) (here a release of petroleum products into the land and water) are the equivalent of a common-law cause of action for nuisance without the common-law limitations. In fact, a common-law cause of action for nuisance is a tort. Further, under the Pennsylvania Supreme Court's interpretation of the citizen-suit provision, a person injured by a violation of the Act can recover as damages the 'costs of cleanup and diminution in property value.' At least the latter element of damages is recoverable under the common law of nuisance and probably the first as well." (citations omitted)

I am not following *Two Rivers* because I disagree with the court's conclusion that *Two Rivers'* claim against

Chevron under the Storage Tank Act was essentially a tort claim akin to a common-law claim for nuisance.[5]

## SUMMARY

Claims that may be raised under section 1305 of the Storage Tank Act are not restricted to claims that closely resemble common-law tort claims. Claims described in the Superior Court opinion in *Centolanza* (see p. 238 of this opinion) and claims permitted in *Juniata Bank* cannot be characterized as actions or proceedings "to recover damages for injury to person or property" or as actions or proceedings "founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass" within the meaning of 42 Pa.C.S. §5524(7).

For these reasons, I enter the following order of court:

## ORDER

On May 29, 2002, it is hereby ordered that defendants' summary judgment motions based on the claim of a two-year limitation period are denied. Status conference will be held on June 13, 2002 at 1:30 p.m.

---

5. The remedies provided for by the Storage Tank Act, as construed in *Juniata Valley Bank* and *Two Rivers,* are not limited to costs that a property owner will incur in order to protect third parties. The remedies include diminution of the value of the property and costs incurred to remove petroleum products that will not contaminate underground water or migrate to another property. In *Two Rivers,* for example, no major cleanup was ordered by the federal or state environmental agencies. For the most part, only monitoring of the site had occurred and "natural attenuation" was part of the solution to abate the contamination at the site. *Id.* at 497. Thus, it would appear that most of the damages which Two Rivers was seeking related to the loss of the use of the property.