**DELAWARE COCA–COLA BOTTLING COMPANY, INC., Plaintiff,**

v.

**S & W PETROLEUM SERVICE, INC., Defendant.**

**No. 4:CV–94–1630.**

United States District Court, M.D. Pennsylvania.

Aug. 2, 1995.

Joel R. Burcat, Craig P. Wilson, Kirkpatrick & Lockhart LLP, Harrisburg, PA, for plaintiff.

James K. Thomas, II, Richard C. Seneca, Thomas, Thomas & Hafer, Harrisburg, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On October 5, 1994, plaintiff Delaware Coca–Cola Bottling Company, Inc., initiated this action with the filing of a complaint alleging that defendant S & W Petroleum Service, Inc., is responsible for the release of fuel oil at a facility owned by plaintiff. The release was discovered on October 10, 1988. Plaintiff has withdrawn two counts of the complaint, those for negligence (Count II) and breach of contract (Count III), and is proceeding solely on Count I, which alleges a violation of the Pennsylvania Storage Tank and Spill Prevention Act, 35 Pa.Stat.Ann. §§ 6021.101 et seq.

Before the court is a motion for summary judgment filed by defendant.

### DISCUSSION:

#### I. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine

issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 323, 325, 106 S.Ct. at 2554.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

## II. STATEMENT OF FACTS

1. In 1988, defendant entered into an agreement to remove two underground storage tanks from a facility located in Mechanicsburg, Cumberland County, Pennsylvania, owned by the Mid–Atlantic Coca–Cola Bottling Company, Inc.

2. In June and July of 1988, defendant removed the two tanks, and installed a 10,-000–gallon underground heating oil storage tank at the Mechanicsburg facility.

3. On October 8, 1988, Mid–Atlantic activated the furnace that was attached to the new storage tank.

4. Fuel was released (allegedly from the new tank) into the soil on the property of Mid–Atlantic, contaminating an area approximately 50 feet wide and 200 feet long.

5. Investigations into the effects of the release were conducted between 1990 and 1993.

6. In 1993, OHM Remediation Services Corporation began remediation of the site.

7. The ongoing remediation efforts have cost approximately $1,103,000.00 to date.

8. Plaintiff is the successor in interest to Mid–Atlantic.

## III. DEFENDANT'S ARGUMENTS

This action is brought pursuant to the Pennsylvania Storage Tank Spill and Prevention Act ("the Act"), 35 Pa.Stat.Ann. §§ 6021.101 et seq. The Act was passed to protect public health and safety through a regulatory scheme for the storage of regulated substances, to provide liability for damages sustained as a result of a release, and to provide for prompt cleanup and removal after a release. 35 Pa.Stat.Ann. § 6021.102(b). The Act provides for a private cause of action to enforce the provisions of the Act and regulations promulgated under the authority of the Act. 35 Pa.Stat.Ann. § 6021.1305(c). Although the language of the Act is ambiguous on the point, the Supreme Court of Pennsylvania has held that remedies available in a private action include costs of cleanup and diminution in property value. *Centolanza v. Lehigh Valley Dairies, Inc.,* 658 A.2d 336, 340 (Pa.1995).

In moving for summary judgment, defendant proffers two basic contentions. First, it argues that a finding of liability on its part would require an impermissible, retroactive application of the Act. That is, the conduct complained of (installation of the new tank and the release) occurred before the effective date of the Act. Second, defendant argues that it is not one of the entities against which a private action may be brought under the Act, i.e. an "owner, operator, landowner or occupier" which is alleged to have violated the Act or related regulations.

## IV. RETROACTIVITY

■ The release about which plaintiff complains apparently occurred between October 8 and October 10, 1988. Plaintiff became aware of the release, by its own admission, at least as early as October 10, 1988. The Act was passed on July 6, 1989, and became effective August 5, 1989. Storage Tank and Spill Prevention Act, Pub.L. No. 169, No. 32, § 101, July 6, 1989 (effective 30 days thereafter). Therefore, the Act was not in existence at the time of the installation by defendant, nor at the time of the release.

Under the Pennsylvania rules of statutory construction, "[n]o statute shall [be] construed to be retroactive unless clearly and

manifestly so intended by the General Assembly." 1 Pa.Cons.Stat.Ann. § 1926. No provision of the Act indicates in any way that it is intended to have retroactive application.

Plaintiff contends, however, that there is in fact no retroactive application involved in this suit. Plaintiff is attempting to recover for a condition existing at the time the costs were incurred. That is, the release caused an ongoing nuisance, the presence of the released heating oil, which continued after the effective date of the Act. We agree with plaintiff.

The applicable law was stated succinctly by the Commonwealth Court of Pennsylvania:

A retroactive law has been defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corporation,* 54 Pa.Commonwealth Ct. 376, 421 A.2d 521 (1980). A law is given retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence. *Id.* Where no vested right or contractual obligation is involved, an act or a regulation is not impermissibly construed retroactively when applied to a condition existing on its effective date, even though the condition results from events which occurred prior to that date. *Creighan v. City of Pittsburgh,* 389 Pa. 569, 132 A.2d 867 (1957).

*R & P Services, Inc. v. Commonwealth of Penna., Dept. of Revenue,* 116 Pa.Cmwlth.Ct. 230, 541 A.2d 432, 434 (1988).

In *Creighan,* a former fireman sued the City of Pittsburgh under the Heart and Lung Act, cited in *Creighan* as 53 Pa.Stat.Ann. § 327, now codified as amended at 53 Pa. Stat.Ann. § 637. The plaintiff sought recovery of benefits which became due after the effective date of the Heart and Lung Act, and the Supreme Court of Pennsylvania agreed that he was entitled to these benefits. The Court held that "an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date ..." 132 A.2d at 871. The

Supreme Court summarized its holding as follows:

*The appellee is not claiming any benefits prior to the effective date of the Act but only thereafter.* A recognition of appellee's claim does not require that we place a retroactive construction on the Act, but simply that we apply the Act to a condition which existed on the date when the Act became effective even though such condition resulted from events which occurred prior to its effective date.

132 A.2d at 870 (emphasis in original). Stated another way, the plaintiff was able to recover because the condition continued to exist after the effective date of the act, and it was the condition, and not any transaction or occurrence which caused the condition, which formed the basis for the recovery.

This principle has been applied by the courts of Pennsylvania in a number of instances. For example, in *R & P Services,* the Secretary of Revenue ordered the revocation of R & P's cigarette stamping agency and wholesale dealer licenses because of R & P's tax delinquency. 541 A.2d at 433. Following R & P's application for renewal of these licenses, the Department of Revenue amended its regulations regarding grounds for denial, suspension or revocation of licenses to include tax delinquency in any system administered by the Department. *Id.* The application for renewal was filed, and the tax delinquencies arose, prior to the effective date of the regulations. *Id.* The Commonwealth Court held:

The condition rendering an applicant for cigarette dealer licenses ineligible for those licenses under the amended regulations is a delinquency in the payment of any tax that is owed or in the filing of any tax form that must be filed. In the present matter, R & P had such delinquencies on and after the effective date of the amended regulations. Furthermore, it did not have a vested right to a cigarette stamping agent or wholesale dealer license for the fiscal year of 1986. Consequently, it can not be said that the amended regulations have been given retroactive effect. The fact that the taxes which were found to still be owing at the time its application

for renewal of its licenses was denied had been due and owing prior thereto, does not mean that the amended regulations have been given retroactive effect.

541 A.2d at 435 (footnotes omitted).

In *Commonwealth of Pennsylvania, Dept. of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corp.*, 54 Pa.Cmwlth.Ct. 376, 421 A.2d 521 (1980), the Bureau sought recovery of amounts deducted from a back wage award by the employer, such sums representing amounts previously paid to the employees as unemployment compensation benefits. The employer laid off a number of employees who applied for and were granted unemployment compensation benefits. The employees brought labor grievances, and in May of 1977 an arbitrator awarded them back pay for the time they were out of work. On January 1, 1978, a statute requiring an employer to pay into the Unemployment Compensation Fund a deduction of unemployment compensation benefits from a back pay award became effective. Three of the workers were paid their back wages in December of 1977; the remainder were paid in February of 1978. 421 A.2d at 523.

The employer argued that, since the award was made before the effective date of the statute, requiring it to deposit the deducted amount would be an impermissible, retroactive application of the statute. The Commonwealth Court disagreed:

> The transaction that triggers the legal liability is the employer's act of making the deduction from the back wage award. The fact of a back wage award, standing by itself, would create no liability under Section 704; nor would the fact that the employee has become ineligible for his past unemployment benefits because of such an award. The employer has no liability under Section 704 unless or until he makes a deduction from the award.

421 A.2d at 524.

In *Commonwealth v. Barnes and Tucker Co.*, 455 Pa. 392, 319 A.2d 871 (1974), the Commonwealth brought an action against a company which had engaged in deep mining operations between 1939 and 1969. 319 A.2d at 873. At issue, *inter alia*, was the applicability of 1970 amendments to the Clean Streams Law, 35 Pa.Stat.Ann. §§ 691.1 et seq. The Supreme Court first held that the Clean Streams Law only restated the common law, and did not create a new cause of action; at best, it could be said to have removed an exemption to a cause of action. 319 A.2d at 884–885. It added:

> Even if liability for the discharge of mine drainage was made abatable for the first time under any theory by the 1970 amendments, a recognition of the Commonwealth's claim based thereon would not require that we place a retrospective construction on these amendments. Rather, we would be applying that section to a condition which existed on the date when the amendments covering discharges from abandoned mines became effective, even though such condition resulted from events which occurred prior to their effective date.

319 A.2d at 885 (citing *Creighan* ).

A final example of the application of this principle is *Gehris v. Commonwealth of Pennsylvania, Dept. of Transportation,* 471 Pa. 210, 369 A.2d 1271 (1977), in which a landowner sought reimbursement for appraisal expenses following the condemnation of property for highway improvements. The condemnation occurred before the effective date of a statute permitting condemnees to recover limited appraisal expenses, but the expenses were incurred after the effective date. 369 A.2d at 1272. The Supreme Court held:

> The event which results in liability of the condemnor for reimbursement is the incurring of expenses; the taking of property is merely an antecedent act, albeit an important one, which puts the chain of events in motion. In this case the expenses were incurred after the effective date of [the statute]. Application of that section to these facts thus involves nothing more than a prospective operation of the statute. As in *Creighan,* appellant-condemnees are "not claiming benefits prior to the effective date of the Act but only thereafter."

369 A.2d at 1273 (footnote omitted).

The same principle applied in each of these cases applies in the instant case. The condi-

tion which gives rise to liability is the public nuisance which results from a violation of the Act, *see* 35 Pa.Stat.Ann. § 6021.1304, since the suit itself is one to abate the nuisance, *see* 35 Pa.Stat.Ann. § 6021.1305(a). It is not a release itself that gives rise to a cause of action under the Act (although the release may give rise to a cause of action for negligence or breach of contract, as originally claimed in this case); it is the remedial action taken to abate the nuisance which gives rise to the cause of action.

Since it is the nuisance which is the basis for the cause of action, and the nuisance existed at the time of the Act's effective date, there is no retroactive application of the Act. Since there is no retroactive application, the application of the Act cannot be impermissible for that reason.

### V.  DEFENDANT AS "OPERATOR"

■ Defendant's second argument is that it cannot be held liable under the Act because it is not one of the persons against whom a private civil action may be brought. Specifically, the governing subsection reads in relevant part:

> Except as provided in subsection (d) [relating to notice], any person having an interest which is or may be affected may commence a civil action on his behalf to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act by any owner, operator, landowner or occupier alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act....

35 Pa.Stat.Ann. § 6021.1305(c).

Defendant argues that it is not an "owner, operator, landowner or occupier" under the Act. Clearly, defendant is not the owner of the tank which is alleged to have released the fuel oil, as it belonged to plaintiff. Moreover, plaintiff is the landowner, not defendant, and plaintiff occupied its own land. The only term which may apply to defendant is "operator."

Under the Act, "operator" is defined as "[a]ny person who manages, supervises, *alters*, controls or has responsibility for the operation of a storage tank." 35 Pa.Stat. Ann. § 6021.103 (emphasis added). Plaintiff argues that defendant altered the tank through the removal of the old tanks and the installation of the new tank. Again, we agree with plaintiff.

Under the Act, a "substantial modification" is defined as "[a]n activity to construct, refurbish, restore or remove from service an existing storage tank piping or storage tank facility which alters the physical construction or integrity of the tank or tank facility." *Id.* The work performed by defendant falls within the definition of substantial modification.

No definition for "alter" is provided in the Act, so that it is given its ordinary meaning. *See* 1 Pa.Cons.Stat.Ann. § 1903(a). The ordinary meaning of alter is "to make different in some particular, as size, style, course, or the like; *modify* ... to change; become different or modified." Random House Dictionary of the English Language 60 (2d ed. 1987) (emphasis added). Conversely, "modify" is defined as "to change somewhat the form or qualities of; *alter partially;* amend ..." *Id.* at 1236 (emphasis added).

Use of the word "modification" in the defined term "substantial modification" shows that it is a particular type of modification or alteration (since they are synonymous), one which defendant performed. Moreover, the definition provided for "substantial modification" clearly fits within the meaning of "alter" in its ordinary usage.

We recognize that an installer would not normally be considered an operator when the word is used in an ordinary manner. However, the definition provided in the Act includes "alter," a word which would not be used to define "operator" for its ordinary usage. The Act therefore broadens the definition of "operator" to include activities which normally would not be considered the operation of a storage tank.

We conclude that defendant's removal of old tanks and installation of new tanks made it an operator within the meaning of the Act.

### VI.  CONCLUSION

The condition at issue in an action under the Storage Tank and Spill Prevention Act is

the condition of being in violation of the Act or related regulations. An action brought under the Act seeks to abate the nuisance, which is the violation. Since the condition which would violate the Act is alleged to have continued after the effective date of the Act, there is no retroactive application of the Act, despite the fact that the condition is said to have arisen from conduct occurring before the effective date of the Act.

Since defendant altered the underground storage tanks at plaintiff's facility, defendant is an operator within the meaning of the Act.

For these reasons, defendant's motion for summary judgment will be denied. An appropriate order shall issue.