**Ziegler v. Lynn**

C.P. of Lehigh County, no. 91-C-2146.

*William K. Malkames,* for plaintiffs.
*Richard J. Jacobs,* for defendants Earl Lynn and E.B. Lynn Oil Co.
*Lewis L. Thompson Jr.,* for defendant Edward W. Hartman Jr.

GARDNER, *J.,* May 15, 1996—This matter is before the court on the motion for summary judgment of defendants Earl Lynn and E.B. Lynn Oil Company filed May 25, 1995 and the motion for summary judgment by defendant Edward W. Hartman Jr. under Pa.R.C.P. 1035 filed June 1, 1995. Oral argument was held on September 15, 1995. For the reasons expressed below, we grant in part and deny in part each motion.

Plaintiff Gloria R. Ziegler is the owner of a one-half interest in property located in Lower Macungie Town-

ship, Lehigh County, Pennsylvania, 4441 Hamilton Boulevard, Allentown, Pennsylvania 18103. Plaintiffs Gloria R. Ziegler and John J. Ziegler II hold title to the other one-half interest in the property in trust for Cynthia Lee Ziegler, Alyssa Ruth Ziegler and John Ziegler III. Ruth Semmel previously owned the property with her husband, now deceased. The complaint alleges that one or more of the plaintiffs owned the property in question at all times relevant to this action. The property consists of a gasoline filling station with underground storage tanks.

On May 15, 1957 the property was leased to the American Oil Company by Ralph O. Semmel and Ruth E. Semmel. On February 10, 1976 Amoco, formerly the American Oil Company, assigned the lease to defendant E.B. Lynn Oil Company. On September 1, 1977 Earl Lynn individually leased the property from plaintiff Ruth E. Semmel. On December 1, 1988 plaintiffs Gloria R. Ziegler and John J. Ziegler [II] leased the property to Edward W. Hartman Jr. to operate a gas station.

Plaintiffs allege that sometime during the term of the leases with E.B. Lynn Oil Company, Earl Lynn and Edward W. Hartman Jr. the underground gasoline storage tanks sprung a leak, causing contamination to the soil. As a result, plaintiffs received a notice of violation from the Commonwealth of Pennsylvania, Department of Environmental Resources. Plaintiffs claim they spent in excess of $50,000 to begin cleaning up the contaminated soil in compliance with the notice of violation. They anticipate spending substantially more to complete the required cleanup.

Plaintiffs' complaint has four counts. Counts I and II allege breach of contract based on the relevant lease agreements. Count I is directed against Edward W. Hartman Jr. and Count II is directed against E.B. Lynn

Oil Company. Counts III and IV allege violation of the Storage Tank and Spill Prevention Act, Act of July 6, 1989, P.L. 169, no. 32, §§101-2104, as amended, 35 P.S. §§6021.101-6021.2104. Count III is directed against Edward W. Hartman Jr. and Count IV is directed against both Earl Lynn and E.B. Lynn Oil Company.

The Supreme Court of Pennsylvania in *McConnaughey v. Building Components Inc.*, 536 Pa. 95, 637 A.2d 1331 (1994), stated the standard for summary judgment as follows:

"Summary judgment is granted properly when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). Summary judgment is appropriate only in those cases which are clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991)." *Id.* at 98, 637 A.2d at 1333.

In addition, the court must accept as true all well-pleaded facts in the non-moving party's pleadings, as well as give that party the benefit of all reasonable inferences from those facts. *O'Neill v. Checker Motors Corp.,* 389 Pa. Super. 430, 434, 567 A.2d 680, 682 (1989). Furthermore, the burden is on the moving party to prove the non-existence of any genuine issue of material fact. *Lyman v. Boonin,* 535 Pa. 397, 404, 635 A.2d 1028, 1032 (1993).

## BREACH OF CONTRACT CLAIMS

*Lease Between Gloria R. Ziegler and John J. Ziegler, Lessors and Edward W. Hartman Jr., Lessee, dated December 1, 1988*

Defendant Hartman, as lessee, contends that he is entitled to summary judgment on the breach of contract claim based on the following language in the one-paragraph addendum to lease agreement attached to the lease. Defendant Hartman maintains the addendum places responsibility for soil cleanup caused by leaks in the storage tanks on plaintiff lessors. The addendum states:

"In addition to all the terms and conditions set forth in the above referenced lease, the parties agree that the lessee is not responsible for the repair, replacement, relocation or removal of the fuel tanks and pumps. In the event a governmental unit or agency requires that the fuel tanks be repaired, replaced, relocated or removed and the lessors elect not to perform same, then, at the option of the lessee this lease can be cancelled."

Plaintiffs allege that the addendum is silent concerning responsibility for damage to the soil caused by leaks from the storage tanks and that other portions of the lease support the position that the defendant lessee is responsible for that damage.

A lease is a contract and is to be interpreted according to contract principles. Determining the intention of the parties is the primary consideration. The intent of the parties is to be ascertained from the contract itself when the terms are clear and unambiguous. However, when an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity. *Hutchison*

*v. Sunbeam Coal Corporation,* 513 Pa. 192, 519 A.2d 385 (1986).

We first analyze the lease to determine whether an ambiguity exists.

"A contract is ambiguous if reasonably intelligent persons would differ as to its meaning. . . . The court, as a matter of law, determines whether the provisions of a lease are clear or ambiguous. . . . Thereafter, the resolution of conflicting evidence offered to determine the parties' intent is within the province of the trier of fact." *In re Estate of Fike,* 385 Pa. Super. 627, 631-32, 561 A.2d 1268, 1270 (1989).

We find that the lease is ambiguous on the issue of soil cleanup. The addendum quoted above places responsibility for repair or replacement of the fuel tanks on the lessor. However, it does not specifically state that the lessor is responsible for the damage to the soil caused by the leak from the fuel tanks, although that is a possible interpretation.

Plaintiffs suggest that paragraphs (c), (e), (l), (m) and (p) of the lease clearly place the responsibility for the damage to the soil on the lessee. Paragraphs (c), (e), (l) and (m) provide as follows:

"The lessee further agrees: . . .

"(c) To keep the said premises in as good repair and condition as at present and at the expiration of this lease, or any renewal of it, and to surrender up the same in like repair and condition, natural wear and damage by the elements excepted; . . .

"(e) Not to permit anything to be done which is contrary to the conditions of the policies of insurance now on the said premises or which may be placed thereon during the terms of this lease or any renewal

thereof, whereby the hazard might be increased or the insurance invalidated; . . .

"(l) To keep the same in good order and repair as they are now, reasonable wear and tear and damage by accidental fire or other casualty not occurring through negligence of the lessee or those employed by or acting for the lessee alone excepted;

"(m) To comply with any requirements of any of the constituted public authorities, and with the terms of any state or federal statute or local ordinance or regulation applicable to the lessees or their use of the demised premises, and save the lessors harmless from penalties, fines, costs, or damages resulting from failure so to do; . . .

"(p) To give the lessors prompt written notice of any accident, fire, or damage occurring on or to the demised premises."

Like the addendum, these clauses do not state who is responsible for damage to the soil caused by leaks from the fuel tanks. They could be interpreted to place responsibility for contamination of the soil on the defendant lessee, although that interpretation is not clearly required. Specifically, paragraph (c) requires the lessee, at the expiration of the lease, to surrender up the premises "in like repair and condition, natural wear and damage by the elements excepted." A fact-finder could conclude that this paragraph places responsibility on the lessee for the cost of cleanup of the contaminated soil if they found that the leak occurred during the lease and that it was not caused by the natural wear and damage by the elements. Likewise, although not free from doubt, an argument could be made that the other quoted paragraphs lend support for placing the cost of cleanup of the contaminated soil on the lessee.

We find that reasonably intelligent people could differ as to the meaning of the lease regarding who is responsible for cleanup of the contaminated soil. Thus, we find an ambiguity in the lease. Because of this ambiguity, the trier of fact must look to extrinsic evidence regarding the intent of the parties. The resolution of conflicting parol evidence regarding the intent of the parties is for the trier of fact. *Hutchison, supra* at 200-201, 519 A.2d at 390. As noted above, it is the burden of the moving party to prove the absence of extrinsic evidence on this point. Because the moving party has not met this burden, summary judgment on this point is not appropriate. Accordingly, we deny the motion.

*Lease Between Ralph O. Semmel and Ruth E. Semmel, Lessors, and the American Oil Company, Dated April 11, 1957, Assigned by Amoco to E.B. Lynn Oil Company on February 10, 1976*

*Lease Between Ruth E. Semmel, Lessor, and E.B. Lynn Oil Company, Lessee, Dated September 1, 1977*

In his brief, defendant Earl Lynn argues that the Count II contract claim does not bind him because Count II is only against E.B. Lynn Oil Company. Alternatively, defendant Lynn argues that the Count II contract claim does not encompass the lease dated September 1, 1977 because it was signed by Mr. Lynn, not E.B. Lynn Oil Company, and this count of the complaint is only against E.B. Lynn Oil Company. However, at oral argument counsel for defendant Lynn acknowledged that E.B. Lynn Oil Company is not a corporation and that Earl Lynn and E.B. Lynn Oil Company are the same entity. Accordingly, the count against E.B. Lynn Oil

Company is, in effect, also against Earl Lynn individually. Thus, each of defendant Lynn's arguments is without merit.

*April 11, 1957 Lease Assigned
on February 10, 1976*

We agree with defendant Lynn that paragraph 14 of the 1957 lease makes plaintiff lessors liable for the damage which occurred. Paragraph 14 provides as follows:

"(14) LESSOR covenants to promptly make, at his own cost and expense, all repairs to the demised premises and the buildings, driveways and improvements thereon, which may be or become necessary to maintain the demised premises in good order and condition for the purposes of a gasoline service station, and to make any and all repairs, alterations or improvements to the demised premises which may be required by public authority, and should LESSOR fail or refuse to immediately make any or all such repairs, alterations or improvements, upon notice from LESSEE as to the necessity therefor LESSEE shall have the right, at its option, to make such repairs, alterations or improvements at the expense of LESSOR, whereupon LESSEE shall have a lien upon said premises for the expenditures so made by it, and is hereby authorized to deduct same from any rents or other amounts payable to LESSOR, or may require LESSOR to reimburse LESSEE therefor in whole or in part; or LESSEE may, at its option, terminate this lease forthwith."

The clear and unambiguous thrust of this paragraph puts the burden on the lessor to make any repairs that are necessary to maintain the property in good order and condition for the purposes of a gasoline service station and to make "any and all repairs, alterations

or improvements to the demised premises which may be required by public authority." The repairs, alterations or improvements "which may be required by public authority" clearly include the type of remediation required by the DER regarding the gasoline leak because it is undisputed by the parties that the DER is a public authority.

Furthermore, contrary to plaintiffs' argument, the notice requirement of this paragraph is not intended to shift the repair responsibility to the lessee. The notice requirement is a protection for the lessee which allows the lessee to make necessary repairs which are the responsibility of the lessor and recover the cost from lessor. Whether or not defendant Lynn gave notice is, thus, irrelevant.

The language of this portion of the lease is unambiguous. Accordingly, we grant the motion for summary judgment of defendants Earl Lynn and E.B. Lynn Oil Company on this lease, and dismiss plaintiffs' breach of contract cause of action regarding it.

### September 1, 1977 Lease

Defendant Lynn contends that the September 1, 1977 lease is void because Ruth Semmel had no title to the property or authority to enter that lease. Defendant maintains that Ruth Semmel had already conveyed the premises to the trustees, pursuant to the trust agreement attached to the complaint as exhibit A. Plaintiffs claim that she had authority to lease the property under the trust agreement, dated June 30, 1975, between Ralph O. Semmel and Ruth E. Semmel as trustors and Gloria Ziegler and John J. Ziegler II as trustees.

Before addressing plaintiffs, response, we note that it is not clear from the record when the property in question was transferred to the trust. It is doubtful,

as defendant appears to assume, that exhibit B to the complaint, a description of the property, is the list of assets transferred to the trust on June 30, 1975. Clearly, in the complaint, exhibit B only refers to the description of the property and is not identified as the assets transferred to the trust. The list of assets transferred to the trust, according to the language of the trust, page one, is marked exhibit A, and apparently is not attached.

In support of the view that the property was not transferred to the trust on June 30, 1975, we note that the complaint indicates that as late as December 31, 1984, Ruth Semmel held a one-half interest in the property which she subsequently deeded to Gloria R. Ziegler and John J. Ziegler II, as trustees, in three separate transfers on December 31, 1984, January 2, 1985 and January 2, 1986. Further confusing matters, in their brief, plaintiffs dispute defendants' claim that Ruth Semmel had no authority under the trust agreement to lease the property, but do not dispute the assumption that the property was transferred to the trust on June 30, 1975. Accordingly, we find that there is a material issue of fact regarding the date of the transfer of the property to the trust.

What is clear, contrary to plaintiffs' argument, is that article IV of the trust agreement did not give Ruth Semmel, as one of the trustors (grantors), the power to exchange or dispose of the assets of the trust and, thus, to bind the trustees. In this regard, article IV provides, in pertinent part:

"Notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to trustees generally pursuant to law shall be construed to enable the trustors or the trustees or any of them, or any other person, to purchase, exchange or otherwise deal with or dispose of all or any part of the corpus

or income of the trust for less than an adequate consideration in money or money's worth, or to enable the trustors or the trustees or any of them, or any other person, to borrow all or any part of the corpus or income of the trust, directly or indirectly, without adequate interest or security."

While article IV is confusing (because of superfluous references to "the trustors" and "any other person"), its purpose is clearly to preclude the trustees from selling or leasing the trust real estate for less than its fair market value. Accordingly, we reject plaintiffs' argument that article IV gives Ruth Semmel as trustor the right by negative implication to lease the property for a fair market value. To interpret article IV otherwise, would be to completely abrogate the clear language of article XIV which irrevocably divests Ruth Semmel of all powers over this property. That language states:

"This trust shall be irrevocable, and the trustors hereby expressly waive all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source they may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke or terminate the trust, or any of the terms of this agreement, in whole or in part. To more fully express their intentions, the trustors hereby declare that their primary purpose in establishing the trust is to provide the beneficiary with certain material comforts during her life, and by this instrument the trustors relinquish absolutely and forever all their possession or enjoyment of, or right to the income from, the trust property, and all their right and power, whether alone or in conjunction with others, to designate the persons who shall possess or enjoy the trust property, or the income therefrom."

Assuming the property had been transferred to the trust on June 30, 1975, the lease agreement would be of no legal effect, sometimes referred to as void, because Ruth Semmel did not have title to the property or authority from the trustees to sign the lease. Williston on Contracts §1:20 (Richard A. Lord, ed., 4th ed. 1990). However, because the date of the transfer is in question, we deny the motion for summary judgment of defendants Earl Lynn and E.B. Lynn Oil Company on this point.

Defendant Lynn does not address the substance of the September 1, 1977 lease regarding his responsibility for cleanup, relying instead on his above rejected arguments that Count II of the complaint only pertains to the earlier February 20, 1976 lease assignment from Amoco and his argument that the lease is void. We find that the September 1, 1977 lease is clear and unambiguous in requiring the lessee to repair the type of damage that occurred as a result of the leak in the storage tanks. The burden is placed on the tenant to keep the premises in good repair and condition.

The first paragraph of the lease provides, "[t]enant also agrees that the said premises will be kept in as good repair and condition as at present, and will at the expiration of this lease, surrender up same in like repair and condition, natural wear and damage by the elements excepted. . . ." There is nothing in the record to indicate that the damage occurred prior to the commencement, or after the termination, of this lease to relieve the tenant of his burden to repair such damage. Nor is there evidence that the damage was caused by the natural wear and damage by the elements. Therefore, we deny the motion for summary judgment of defendants Lynn and E.B. Lynn Oil Company with respect to this lease.

## TORT CLAIMS

### *Storage Tank and Spill Prevention Act*

All defendants contend that plaintiffs' tort claims based upon the Storage Tank and Spill Prevention Act should be dismissed because the Act does not provide for recovery of monetary damages through private causes of actions. All parties rely upon *Centolanza v. Lehigh Valley Dairies Inc.,* 540 Pa. 398, 658 A.2d 336 (1995).[1] Plaintiffs cite *Centolanza* for the proposition that a private cause of action exists under the Act for costs of cleanup.

*Centolanza* involved an action by a landowner whose property was allegedly contaminated because of leaks from underground fuel storage tanks on adjacent property. Plaintiff landowner sued the owner and operator of the tanks. The Supreme Court of Pennsylvania held that a private cause of action may be brought to collect costs for cleanup and diminution in property value, where the DER does not act.

"Private citizens may take action *when DER has failed to act;* thus promoting the goal of prompt cleanup and removal of spills. Therefore, we affirm the Superior Court and hold that under section 6021.1305, a private cause of action may be brought to collect costs for

---

1. The parties relied on the decision of the Superior Court of Pennsylvania in their briefs, *Centolanza v. Lehigh Valley Dairies Inc.,* 430 Pa. Super. 463, 635 A.2d 143 (1993). In that decision the Superior Court held, in part, that the Act provides for a private cause of action to compel compliance, but does not permit a private cause of action for damages. The Supreme Court of Pennsylvania affirmed the Superior Court decision but held, in part, that the Act permits a private cause of action for damages as well as a private cause of action to compel compliance.

cleanup and diminution in property value." *Id.* at 407, 658 A.2d at 337. (emphasis added)

In the case before this court the DER has already acted against plaintiffs who are owners of underground storage tanks. Moreover, in the instant case, plaintiffs, storage tank "owners," are trying to recover the costs of cleanup from storage tank "operators" as defined in the Act. 35 P.S. §6021.103. Neither the issue of the right to a private cause of action where the DER has already acted nor the issue of whether owners of storage tanks have a private right of action against "operators" of storage tanks was at issue or discussed in *Centolanza.* Accordingly, *Centolanza* is not on point.

In a similar action, *Delaware Coca-Cola Bottling Company Inc. v. S & W Petroleum Service Inc.,* 894 F. Supp. 862 (M.D. Pa. 1995), an owner of a storage tank sued a storage tank installer-operator. (Installers come within the definition of operator under the Act because they "alter" storage tanks.) Relying on *Centolanza,* the court stated that the Act provides for a private cause of action to enforce the provisions of the Act and the regulations promulgated under the Act. However, this case is again inapplicable because there is no mention of prior DER action. In addition, while *Delaware Coca-Cola* is an "owner" versus "operator" case, defendants did not raise the issue of whether the Act provides for a private action where the "owner" sues an "operator" of the same storage tanks. The parties apparently assumed that the Act applied in such situations.

The case before this court is an issue of first impression in our Commonwealth. We know of no other cases where an owner of a storage tank was permitted to bring a private action under the Act against operators where the DER has already acted.

In general the Act regulates owners and operators of storage tanks by requiring permits and fees and dictating proper uses. The Act provides:

"A violation of this Act or of any order or regulation adopted by the department or of permits issued by the department shall constitute a public nuisance. The department shall have the authority to order any person causing a public nuisance to abate the public nuisance. In addition, the department or any Commonwealth agency which undertakes to abate a public nuisance may recover the costs of abatement in an action in equity brought before any court of competent jurisdiction. Whenever such nuisance shall be maintained or continued contrary to this Act or such orders, regulations or permits the same may be abatable in the manner provided by this Act. Any person who causes such public nuisance shall be liable for the cost of abatement." 35 P.S. §6021.1305(a).

There is a specific section of the Act providing for private causes of action, as follows:

"(c) Private actions.—Except as provided in subsection (d) [relating to notice to Department of Environmental Resources] any person having an interest which is or may be affected may commence a civil action on his behalf to compel compliance with this Act or any rule, regulation, order or permit issued pursuant to this Act by any owner, operator, landowner or occupier alleged to be in violation of any provision of this Act or any rule, regulation, order or permit issued pursuant to this Act. . . . No such action may be commenced if the department has commenced and is diligently prosecuting a civil action in a court of the United States of the Commonwealth or is in litigation before the Environmental Hearing Board to require the alleged violator to comply with this Act or any rule, regulation,

order or permit issued pursuant to this Act, but, in any such action in a court of the United States or of the Commonwealth, any person having or representing an interest which is or may be adversely affected may intervene as a matter of right without posting bond." 35 P.S. §6021.1305(c).

In construing a statute we are guided by the principles of statutory construction and legislative intent as prescribed by the legislature. 1 Pa.C.S. §§1921-1922. Generally our main goal is to determine the intent of the General Assembly.

The language of the Act as quoted above reflects a clear intent to provide for private actions. It is equally clear that the private actions contemplated by the legislature were aimed at enforcing the requirements of the Act, that is, making sure that storage tanks were regulated and spills cleaned up.

It is equally clear that the legislature did not consider the problem of owners who have been sued by the DER seeking to obtain reimbursement for the costs of cleanup by suing operators, or vice versa. This is clear not only from the absence of any language to that effect, but also from the problems of applying some of the provisions of the Act to situations where owners sue operators.

For example, the Act provides, in part, that "it shall be presumed as a rebuttable presumption of law in civil and administrative proceedings that a person who owns or operates an aboveground or underground storage tank shall be liable, without proof of fault, negligence or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the site of a storage tank containing or which contained a regulated substance of the type which caused the damage, contamination or pollution." 35 P.S.

§6021.1311. This presumption does not make sense in the case of an owner suing an operator.

There is no reason why an owner, just because he initiated suit, should benefit from the rebuttable presumption against an operator. While one might argue that the presumption should be available for an innocent owner who is suing a negligent operator to encourage operators to be careful, the reverse argument could also be made. Arguably, an innocent operator, forced to pay for cleanup by the DER, should benefit from the presumption against a negligent owner or against a different negligent operator. To apply this presumption to suits where owners sue operators, or vice versa, could result in races to the courthouse, as the benefit of the presumption would appear to apply to the first party to file a suit.

We note that the legislature provided resources to assist some owners or operators faced with financial obligations resulting from enforcement of the Act. Specifically, an Underground Storage Tank Indemnification Fund was established "for the purpose of making payments to owners and operators of underground storage tanks who incur liability for taking corrective action or bodily injury or property damage caused by a sudden or nonsudden release from underground storage tanks." 35 P.S. §6021.704. The fund consists of the fees assessed under section 705(d) of the Act and are to be paid by owners or operators, as appropriate. 35 P.S. §6021.705(d).

In addition, a loan fund was established by the Act to assist owners or operators in certain cases where corrective action is required, where there are no more than two owners or operators who own no more than 20 storage tanks. 35 P.S. §6021.709. These sections are indications that the legislature was aware of the

costs involved in requiring owners and operators to take corrective measures. While they do not discuss owner suits against operators, or vice versa, they are an indication that the legislature was aware of the burden that the Act would impose on owners and operators and chose to deal with it through an insurance and loan mechanism.

We find that the Act does not address the situation of an owner suing an operator, or vice versa. Where the DER has already acted to address the problem, the purpose of the Act is served. It is not necessary to permit owners to sue operators, or vice versa, to effectuate the purpose of the Act, that is, to insure that tanks are regulated and spills are cleaned up.

Although it is clear that some innocent owners or operators may be adversely affected by our ruling, it is not our role to address those problems in the face of clear legislative intent not to address those problems. Injured parties will need to look to the funds, other insurance, the common law or private contractual arrangements to resolve these areas not covered by the Act.

Finding nothing in the Act to support the view that the legislature intended this type of private action and concluding that such an interpretation is inconsistent with at least part of the Act, we hold that the Act does not provide for private actions in disputes between owners and operators, at least in the situation where the DER has already initiated action by filing a notice of violation. We do not have before us, and therefore do not address, whether the Act should apply to private actions between owners and operators if the DER has not acted. Accordingly, we grant defendants' motions for summary judgment on the tort actions.

*Retroactive Application*

Although our holding on the applicability of the Act makes it unnecessary to address the other issues raised by defendants, we will briefly address them. First, defendant Lynn argues that the Act should not apply to him because his lease expired (no later than December 1, 1988) before the Act became effective (August 30, 1989). He argues that it would be unconstitutional to apply the Act retroactively to him.

However, there is no retroactive application involved in this suit. Plaintiffs are attempting to recover costs for a statutorily defined "public nuisance" which results from a violation of the Act. 35 P.S. §6021.1304. Because it is the nuisance which is the basis for the cause of action, and the nuisance existed at the time of the Act's effective date, there is no retroactive application of the Act. *Delaware Coca-Cola,* 894 F. Supp. at 864-67.

*Operator*

Defendant Lynn also contends that the Act does not apply to him because he was not an "operator" under the Act. He contends that he never operated the gas station, but sublet it to operators. He states that he only sold and delivered gas to the operators. The Act defines "operator" as "[a]ny person who manages, supervises, alters, controls or has responsibility for the operation of a storage tank." 35 P.S. §6021.103. We find that the language includes Mr. Lynn within this definition. Once he leased the property, he had control of the storage tank whether or not he chose to use that control and whether or not he chose to sublet it.

## Statute of Limitations

Finally, defendant Lynn raises the defense of the statute of limitations. We find that his last lease expired no later than December 1, 1988, and that the plaintiffs filed their writ of summons on Mr. Lynn and L.B. Lynn Oil Company on August 7, 1991, well within the four year statute of limitations for contracts of this type. 42 Pa.C.S. §5525.

With respect to the tort action, the Act itself sets forth its own limitation period. It provides that actions for penalties under this Act may be commenced within 20 years of the date the offense is discovered. 35 P.S. §6021.1314.

With respect to private actions, the condition which gives rise to liability is the public nuisance which results from a violation of the Act. 35 P.S. §6021.1304. It is not a release that gives rise to a cause of action under the Act (although the release may give rise to the cause of action for breach of contract as was alleged). It is the remedial action taken to abate the nuisance which gives rise to the cause of action.

Neither party has alleged sufficiently specific factual information to determine when the remedial action began or was completed. Under the standard for reviewing summary judgment motions, the burden is on the moving party (the defendants) to prove the non-existence of any genuine issue of material fact. *Lyman v. Boonin, supra.* Because the moving party has not met this burden, summary judgment on this point is not appropriate.

For all the foregoing reasons, we grant the motions for summary judgment with respect to the motion of the defendants Lynn and E.B. Lynn Oil Company on the breach of contract regarding the February 10, 1976 lease, and with respect to all defendants' motions on

the private action brought under the Act. We deny defendants' motions on the remaining breach of contract allegations regarding the December 1, 1988 lease with Edward W. Hartman Jr. and regarding the September 1, 1977 lease with Earl Lynn.

## ORDER

Now, May 15, 1996, upon consideration of the motion for summary judgment of defendants Earl Lynn and E.B. Lynn Oil Company filed May 25, 1995 and the motion for summary judgment by defendant Edward W. Hartman Jr. Under Pa.R.C.P. 1035 filed June 1, 1995, after oral argument held on September 15, 1995, upon consideration of the briefs of the parties, and for the reasons expressed in the accompanying opinion, it is ordered that the motions are granted in part and denied in part.

It is further ordered that the motion for summary judgment of defendants Earl Lynn and E.B. Lynn Oil Company is granted with respect to the breach of contract claim arising out of the lease of February 10, 1976.

It is further ordered that the portion of Count II of plaintiffs' complaint relating to the lease of February 10, 1976 is dismissed.

It is further ordered that the motion for summary judgment of defendants Earl Lynn and E.B. Lynn Oil Company is denied with respect to the breach of contract claim arising out of the lease dated September 1, 1977.

It is further ordered that the motion for summary judgment by defendant Edward W. Hartman Jr. is denied with respect to the breach of contract claim arising out of the lease dated December 1, 1988.

It is further ordered that the motions for summary judgment regarding the Storage Tank and Spill Prevention Act are granted.

It is further ordered that Counts III and IV of plaintiffs' complaint are dismissed.

