**UNITED STATES of America Plaintiff,**

**v.**

**SUNOCO, INC.; Sunoco, Inc. (R&M); Atlantic Refining and Marketing Corp.; Sunoco Partners Marketing and Terminals LP; and Atlantic Richfield Company; Defendants.**

**Civil Action No. 05–6336–ABB.**

United States District Court, E.D. Pennsylvania.

July 12, 2007.

Annetta Foster Givhan, Virginia A. Gibson, U.S. Attorney's Office, Philadelphia, PA, Rachel Jacobson, Sue Ellen Wooldridge, Daniel S. Smith, David E. Street,

Katherine Lynn Vanderhook, U.S. Department of Annetta Foster Givhan, Virginia A. Gibson, U.S. Attorney's Office, Philadelphia, PA, Rachel Jacobson, Sue Ellen Wooldridge, Daniel S. Smith, David E. Street, Katherine Lynn Vanderhook, U.S. Department of Justice, Washington, DC, for Plaintiff.

Evynn M. Overton, Robert Brager, Timothy M. Sullivan, Beveridge & Diamond PC, Baltimore, MD, Harold L. Segall, Beveridge & Diamond, Joel M. Gross, Kristen Klick White, Meetu Kaul, Michael D. Daneker, Arnold & Porter LLP, Washington, DC, Randall K. Miller, Arnold & Porter, LLP, McLean, VA, for Defendants.

### Opinion and Order

ANITA B. BRODY, District Judge.

### I. Introduction

The United States has filed suit against defendants Sunoco et al. and Atlantic Richfield Company et al. ("AR") under the Pennsylvania Storage Tank and Spill Prevention Act, 35 Pa.C.S. § 6021.101, et seq., ("Tank Act"), the Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S. § 8324 ("UCATA"), the Clean Streams Act, 35 Pa.C.S. § 691.1, et seq., ("CSA") and the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). The suit alleges that the Point Breeze oil refinery, owned by the defendants at various points in time, caused underground petroleum pollution to an adjacent military supply depot called the Defense Supply Center Philadelphia ("DSCP property").[1] The United States has moved for a judgment on the applicable statute of limitations, but does not seek a determination of whether its claims are actually time-barred. Defendant Sunoco opposes the motion. De-

---

[1] The federal hazardous waste statute, CERCLA, excludes petroleum contamination. 42 U.S.C. § 9601(14).

fendant AR has filed its own cross-motion for judgment on the applicable statute of limitations, as well as for a determination of whether the claims are time barred. This opinion addresses only the United State's motion for judgment on the statute of limitations and the portion of AR's cross-motion for summary judgment on the statute of limitations.

I conclude that the United States' Tank Act claim for diminution of property value is a tort claim for money damages under § 2415(b) and is subject to the three year statute of limitations. The Tank Act claims for cost recovery and the UCATA claim for contribution are contracts implied in law under § 2415(a) and are subject to the six year statute of limitations. The United States is time barred from asserting both of its Tank Act claims against AR. AR may refile its motion on the statute of limitations for the UCATA claims at the close of discovery. Whether the Tank Act and UCATA claims against Sunoco are time barred is not reached in this opinion.

## II. Facts and Complaint

The complaint alleges that the DSCP, located in South Philadelphia and separated by a 550 foot wide corridor from the Point Breeze refinery, was contaminated by underground migration of petroleum products from the refinery. ¶ 12. Although the military retains the surface and subsurface property rights, the air rights were transferred to the Philadelphia Authority for Industrial Development in 2001. The property is currently used as a civilian shopping mall called "Quartermaster Plaza." ¶ 16. According to the original complaint, the United States first detected contamination in 1987 from a fuel leak from a United States gas station located on the DSCP property itself. The Pennsylvania environmental agency notified the DSCP that it was in violation of state regulations. ¶ 17.[2] When the United States further investigated the pollution (through studies by the Army Corp. of Engineers and outside consultants), it found "widespread petroleum contamination" that could not have come from the DSCP gas station. ¶ 18—34. In 1995, one such study commissioned by the United States concluded that Point Breeze was the most likely source of the contamination. ¶ 29–30. The pollution is still continuing to migrate from Point Breeze to the United States property. ¶ 45, 47. To date, the United States has incurred $22,000,000 in cleanup costs. ¶ 75.

The United States sought cost recovery under the Tank Act in its original Complaint Act, ¶ 78, and added a claim for diminution of property value under the Tank Act in its First Amended Complaint. The Tank Act is a comprehensive regulatory scheme governing petroleum storage tanks in Pennsylvania. 35 Pa. St. Cons.§ 6021.101, et seq. Violations of the Tank Act are "public nuisances," § 6021.1304, and are "abatable in the manner provided by law or equity for the abatement of public nuisances," § 6021.1305(a). The Tank Act allows "any person having an interest which is or may be affected" to file a suit to "compel compliance" with the Act. § 6021.1305(c). This express private right of action has been interpreted by the Pennsylvania Supreme Court to include the right to cost recovery and diminution of property value. *See Centolanza v. Lehigh Valley Dairies, Inc.,* 540 Pa. 398, 658 A.2d 336, 339–40 (1995).

The United States also seeks contribution from the defendants under Pennsylvania's Uniform Contribution Among Tortfeasor's Act. ¶ 88–93. The United States seeks pro rata contribution from the de-

---

**2.** Paragraph references are to the original complaint.

fendants on the theory it is only liable for a small portion (less than 5%) of the total pollution but has paid to remediate the whole. ¶ 90—93. The UCATA establishes that "[t]he right of contribution exists among joint tortfeasors." 42 Pa. Const. Stat. § 8324. An action for contribution under UCATA can be initiated in the underlying tort suit or as a separate action between joint tortfeasors. *Mattia v. Sears, Roebuck & Co.*, 366 Pa.Super. 504, 508, 531 A.2d 789, (Pa.Super 1987).

The United States also made claims for relief under the Clean Streams Act and Declaratory Judgment Act that are not relevant to this opinion.

### III.   Motions on Statute of Limitations

The United States has filed a Motion for Order on Applicability of Statutes of Limitations, seeking a ruling on only the legal question of which statute of limitations applies to its Tank Act and UCATA claims.[3] The United States argues that no statute of limitations applies, or that the Pennsylvania twenty year Tank Act limit applies. However, the United States asks the court to reserve its decision on whether its claims are actually time-barred until after the close of discovery. AR, in its opposition to the United States and its cross-motion for summary judgment, argues that the three or six year general federal statute of limitations 28 U.S.C. § 2415 applies and that the claims against it are time barred. Sunoco argues in its opposition to the Untied States' motion that Pennsylvania law governs rather than

federal law, and that the Pennsylvania catch-all six year period applies rather than the twenty year Tank Act period. Sunoco also argues that the United States' motion is entirely premature and should be dismissed for that reason.

### IV.   Sovereign Status

To begin, the principle of sovereign immunity requires that any ambiguity in interpreting a statute of limitations must be resolved in favor of the government. *BP America Production Co. v. Burton,* —— U.S. ——, ——, 127 S.Ct. 638, 646, 166 L.Ed.2d 494 (2006). When the United States is a plaintiff asserting state or federal law claims in its sovereign capacity, it is not subject to any statute of limitations unless Congress waives sovereign immunity and imposes a limit itself. *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *United States v. John Hancock Mutual Life Ins.,* 364 U.S. 301, 308, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960); *Dole v. Local 427,* 894 F.2d 607, 610 (3d Cir.1990). The United States has been found to be acting outside of its sovereign capacity in narrow circumstances. *See, e.g., United States v. California,* 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993). If "public policies are served and the public interest is advanced by the litigation," the government is acting in its sovereign capacity and is not subject to statutes of limitations. *Dole,* 894 F.2d at 612.

---

**3.**   The motions addressed here were filed before the United States was granted leave to file its First Amended Complaint, but after it had filed its motion to amend. This opinion addresses the statute of limitations for the entire case, encompassing the amended complaint. The additional grounds for recovery in the First Amended Complaint --- loss of property value under the Tank Act and declaratory relief for future cleanup costs under the Tank Act --- do not affect my reasoning on the

basic question of statute of limitations. However, because my decision on the later-added grounds in the First Amended Complaint is technically sua sponte, I will give the parties ten days from the issuance of this opinion to request reconsideration. Such a request should describe briefly any additional facts and arguments that were not presented in these motions, but might alter the outcome if considered.

■ In this case, the United States seeks to facilitate environmental protection and restoration of public land by imposing liability on polluters through state law. Even without any specific Congressional command to undertake this particular action, it is clear that the United States is operating in its sovereign capacity: Few acts are more quintessentially sovereign than caring for the nation's land. In addition, a patchwork of Congressional mandates to clean up Department of Defense sites and obtain costs from polluters reinforces that the United States is acting with a "public purpose" in this action.[4] *Dole*, 894 F.2d at 612. Therefore, the United States is not subject to a statute of limitations unless it has chosen to impose one on itself.

## V. General Federal Statute of Limitations: 28 U.S.C. § 2415

Although the United States acts here as a sovereign, it may have statutorily waived its immunity to statutes of limitation under 28 U.S.C. § 2415. Section 2415 statute provides that:

> (a) ... every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.
>
> (b) ... every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the

complaint is filed within three years after the right of action first accrues.

28 U.S.C. § 2415. The United States argues that it is not subject to § 2415 because the statutes it sues under are not "torts" or "contracts" for "money damages." If the United States is correct, then it is subject to no statute of limitations at all.

The United States posits that to determine whether § 2415 applies, the court should look not to the actual claim filed, but rather to all the conceivable causes of action provided by the statute. If the underlying statutes being invoked (here, the Tank Act and the UCATA) can be characterized more broadly than simply "tort" or "contract," or could in theory provide remedies in addition to "money damages," the United States argues that § 2415 does not apply. In essence, the United States says that unless the statute is a *pure* tort statute or a *pure* contract statute, there is no statute of limitations, regardless of whether the claims it actually files are tort or contract claims. According to this view, § 2415 does not apply because the Tank Act and UCATA may allow some theoretical plaintiffs to assert non-tort and non-contract claims and non-money damages claims, such as injunctive relief requiring the polluter to comply with regulations and permits under the Tank Act.

But § 2415 provides no support for such an interpretation. By its plain terms, § 2415 concerns an "action" for "any tort" or "any contract"; it is not directed to-

---

**4.** *See, e.g.,* Defense Environmental Restoration Program, 10 U.S.C. § 2703(e) (allowing recovered environmental response funds to be used for further environmental restoration nationwide); Defense Authorization Act, 10 U.S.C. § 2701 (1998) ("Recovery and Sharing or Costs of Environmental Restoration at Department of Defense Sites"); Base Re-Alignment and Closure Process, P.L. 110-510

§ 2905(a) (environmentally compliant privation of military installations); *Environmental Cleanup at DOD: Better Cost Sharing Needed at Government–Owned Contractor–Operated Sites*, GAO/NSAID–97–32, Report to the Subcommittee on National Security. International Affairs, and Criminal Justice, Committee on Government Reform and Oversight, House of Representatives, March 1997.

wards "tort statutes" or "contract statutes" or "money damages" in general, but rather to the .concrete "action" filed in court. *See BP America,* 127 S.Ct. at 643–44 (emphasizing that term "action" in section 2415 should be strictly construed to mean a complaint filed in a court). As such, the claims asserted and remedies sought by the United States in *this* action must be examined, not the entire theoretical range of claims and remedies provided by the Tank Act or UCATA.[5]

Although the United States deserves a degree of favoritism in interpreting statutes of limitations, it is not entitled to an interpretation that would effectively gut § 2415. Many statutory causes of action under which the United States might sue can be characterized as, in theory, allowing for claims other than pure tort or pure contract. Many suits allow the possibility of injunctive relief rather than only money damages. Although the task of characterizing the actual claims and remedies pleaded to see if they constitute "tort" or "contract" or "money damages" under § 2415 is not without difficulty and uncertainty, Congress intended that it be done.

*Malley–Duff Assoc. v. Crown Life,* 792 F.2d 341, 353 (1986) and *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) do not apply to this case. Those cases involved individual federal substantive law statutes (RICO and § 1983) that lack express limitations periods. Instead of creating a patchwork of limitations periods by requiring each claimant to borrow a state statute of limi-

tations for each claim, the *Malley–Duff* and *Wilson* courts imposed a single statute of limitations for all RICO and § 1983 claims. The *Wilson* Court reasoned that imposing a uniform statute of limitations, rather than requiring that each claim be individually characterized to fit into an existing state statute of limitations, best served Congress's intent to provide a "uniquely federal remedy" for civil rights violations. 471 U.S. at 271–75, 105 S.Ct. 1938.

The United States argues that *Wilson* and *Malley–Duff* should be read to require focus on the Tank Act and UCATA in the abstract, rather than on the United States's concrete claims. But the considerations at play in *Malley–Duff* and *Wilson* do not apply here because § 2415 does not present the same need for uniformity as do RICO and § 1983. The purpose of § 2415 is to limit one single plaintiff's "actions" under multiple statutes, not to provide hundreds of millions of individuals with uniform rights under one particular statute. The question here is not the United States's rights under the governing *substantive* law (the Tank Act and UCATA), but rather the limits placed on the United States by § 2415. Nothing in the text of § 2415 or its legislative history suggests that Congress was concerned with providing uniformity as a benefit to the United States as a plaintiff. Furthermore, under § 2415 there are only three possible outcomes facing the single plaintiff to which it applies: six years; three years; or no limit at all. A claim-by-claim

---

**5.** My decision in *Jodek Charitable Trust v. Vertical Net, Inc.,* 412 F.Supp.2d 469, 483 (E.D.Pa.2006) (holding that a provision of Pennsylvania's UCC was "sui generis" and did not sound in tort for statute of limitations purposes) and the Pennsylvania trial court's decision in *Mistick PBT v. Liss,* 57 Pa. D. & C. 4th 233 (Pa.Ct.Com.Pl.2002) (holding Tank Act does not sound in tort for state statute of limitations) are not to the contrary. Those

cases (along with the other Pennsylvania cases cited by the United States) involved the Pennsylvania state statute of limitations applicable to Pennsylvania claims, not the federal statute of limitations applied to state claims. While Pennsylvania law provides the rule of decision for determining the substantive entitlements of the Tank Act, federal law determines the manner in which the federal statute of limitations applies.

application of § 2415 simply does not pose the same severe problems for uniformity as would a claim-by-claim application of 50 separate statutes of limitations regimes to the many thousands of RICO and § 1983 plaintiffs.[6]

## VI. Tank Act Claims

Having determined that § 2415 must be applied to the particular claims in this case, the next step is to decide whether the claims conform to the terms of § 2415: whether they are "founded upon a tort" or "founded upon any contract express or implied in law or fact"; and whether they seek the remedy of "money damages."

### A. Resemblance to Torts

The United States seeks both cost recovery and diminution of property value under the Tank Act. By the plain language of the statute, these Tank Act claims resemble torts. Violations of the Tank Act are "public nuisances," § 6021.1304. The Tank Act gives a private right of action to "compel compliance" with the act. § 6021.1305(c). This private right of action has been interpreted to include the right to cost recovery and damages for diminution of property value. *See Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 658 A.2d 336 (1995). Violations are "abatable in the manner provided by law or equity for the abatement of public nuisances," § 6021.1305(a).

In addition, the United States has represented to this Court that "the statutes under which we sued, actually sound in tort, for example, approving a violation in the Storage and Tank Act ... constitutes a nuisance *per se.*" Tr. at 25 (March 29, 2006).[7] And the United States has also asserted a claim under the Uniform Contribution Among Tortfeasors Act for the underlying violation of the Tank Act, which also indicates that the United States presents a tort claim for the Tank Act claims for both cost recovery and property value diminution.

### B. Diminution of Property Value: Tort for Money Damages

■ A money remedy for diminution of property value caused by the tort of pollution is a classic tort for money damages under any analysis. Thus, the three-year statute of limitations of § 2415(b) applies to the diminution of property value claim.

### C. Cost Recovery: Contract Implied In Law

■ The cost recovery claim is not as easily analyzed as the diminution of property value claim, despite its resemblance to a tort. Section 2415(a)'s six-year limitations period extends to contracts "implied in law," which may be triggered by a tort.

The CERCLA cost recovery cases provide important guidance for determining the nature of a pollution cost recovery claim.[8] In *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 412 (3d Cir.1995), the court determined that CERCLA cost recovery remedies are restitutionary, citing the Restatement (First) of Restitution

---

6. Even if I were to follow the United States' approach to analyzing § 2415, I would find that the Tank Act is essentially a tort statute for public nuisance. *See Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F.Supp.2d 432, 440 (M.D.Pa.2000).

7. This statement was made before the United States amended its complaint to add the diminution of property value claim. The United States made this representation in the context of a request for a jury trial, not for statute of limitations purposes.

8. CERCLA has had its own built-in statute of limitations for cost recovery and contribution claims since 1986, so there is very little case law applying the general limitations of § 2415 to CERCLA. CERCLA cost recovery claims are subject to a three or six year limitations period, and contribution is subject to a three-year limit. 42 U.S.C. § 9613(g).

§ 115.[9] *Id.* Restatement § 115 is entitled "Performance of Another's Duty to the Public." [10] Under § 115, when one person undertakes to perform another's pre-existing duty, he is entitled to restitution for the amount of money he expended. That duty may be triggered by a tort. This type of restitution, which is based on the concept of unjust enrichment, is also referred to as "quasi-contract" or "contract implied in law." Dan B. Dobbs, *Law of Remedies* § 4.2(3), at 385–86, and § 5.2(5), at 505–06 (2d ed. 1993) (Hornbook Series).[11] The United States in fact states that for certain purposes, its cost recovery claim can be characterized as restitution and quasi-contract or contract implied in law. U.S. Mem. at 32 (docket entry # 46).

The Fifth and Ninth Circuits and the Southern District of New York have found that, for statute of limitations purposes, cost recovery under the Clean Water Act is an "implied in law" contract under § 2415(a) because of its restitutionary nature. *See U.S. v. P/B STCO 213, ON 527 979,* 756 F.2d 364, 375 (5th Cir.1985); *U.S. v. Dae Rim Fishery Co., Ltd.,* 794 F.2d 1392 (9th Cir.1986); *U.S. v. Water Quality Ins. Syndicate,* 613 F.Supp. 239 (D.C.N.Y. 1985). Those courts reasoned that the Clean Water Act establishes the polluter's duty to clean up his pollution, and that a contract implied in law forms when the United States undertakes the polluter's duty. The Third Circuit has expressly referenced this line of cases, noting that "the United States may sue for damages based on a quasi-contractual claim, see, e.g., *United States v. Dae Rim Fishery Co.,* 794 F.2d 1392, 1394–95 (9th Cir. 1986)." *Matter of Penn Cent. Transp. Co.* 831 F.2d 1221, 1230 (3d Cir.1987).

*Hatco* and the Clean Water Act cases compel the conclusion that Tank Act claims for cost recovery are restitutionary contracts implied in law under § 2415(a). Like CERCLA and the Clean Water Act, the Tank Act establishes a regulatory regime that places the primary duty for abatement of pollution on the polluter and allows a person who performs the abatement in the polluter's place to recover costs. The Tank Act's private right of action to abate nuisances allows plaintiffs

9. *Hatco* concerns whether CERCLA cost recovery and contribution claims trigger the Seventh Amendment right to a jury trial, which is not the matter before me in the present motions. However, *Hatco*'s characterization of cost recovery and contribution as restitutionary is very persuasive dicta when applied to analyzing Tank Act and UCATA claims for § 2415 purposes.

10. Under Restatement § 115.

A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefor, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

One who abates another's public nuisance with intent to charge is entitled to restitution, because the tortfeasor would otherwise have had to pay for the abatement himself. Rst. § 115 cmt. b. According to § 115 cmt. c, "intent to charge" is defined in § 114. Comment c to § 114 specifies that:

[The rule] does not apply, however, if there is no intent to charge anyone; a person who acts entirely from motives of humanity is not entitled to restitution. The fact that the person acting is in the business of supplying the things or is acting in the course of his profession, is evidence of an intent to charge. On the other hand, a nonprofessional person who gives a comparatively small amount of service normally would be considered as having no intent to charge for the services, in the absence of evidence of such intent.

11. Although environmental response costs could also be seen as plain compensatory damages, many courts, including the Third Circuit, prefer to characterize them as restitution for unjust enrichment instead. *See* Dobbs § 5.2(5), at 505–06.

like the United States to "compel compliance" with the Act, emphasizing that compliance is, in the first instance, the duty of the polluter. § 6021.1305(c). The Tank Act's private right of action gives plaintiffs like the United States the right to stand in for the state government and abate the nuisance themselves if the polluter is not in compliance and the state government has not acted. *Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 658 A.2d 336, 339–40 (1995). A private action for cost recovery is "no different than one brought by the Commonwealth." *Id.* at 341. Thus, a cost recovery claim under the Tank Act is a contract implied in law under § 2415(a).

### D. Cost Recovery: Money Damages

Even if the cost recovery claim is for a contract implied in law under § 2415(a), it must also be "for money damages" to fall under the statute's six-year limitation period. According to the United States, the term "money damages" refers to remedies at law rather than equitable remedies; and because cost recovery is equitable not legal, it is not covered by § 2415.[12] But whether a contract implied in law is for "money damages" under § 2415(a) cannot turn on the distinction between law and equity. Such an interpretation would be nonsensical here: The whole point of a contract implied in law is to "give the plaintiff a money judgment that will recover the defendant's unjust benefits." Dobbs § 4.2(3), at 386; *see also id.* at § 4.1(4), at 378 ("Restitution in money was afforded at law by actions which, as a group, were referred to as quasi-contract or implied-in-law contract.") The only possible interpretation is that "money damages" in § 2415(a) extends to monetary judgments sought under the guise of a contract implied in law, such as the United States's claim for cost recovery.[13] Otherwise, § 2415(a) could never encompass any contract implied in law — a result manifestly at odds with the plain language of the statute's command to impose a statute of limitations on contracts implied in law.

In conclusion, the United State's claim for cost recovery under the Tank Act is an action for a contract implied in law and is subject to § 2415(b)'s six year statute of limitations.

### VII. Contribution Claims: UCATA

■ The United States makes a claim for contribution under the Pennsylvania

---

12. This is why as noted above in Part VI.B, that the United States stated that its cost recovery claim can be characterized as restitution (i.e., quasi-contract), which it assumes is equitable. U.S. Mem. at 32 (docket entry # 46). But the United States's assumption that restitution is equitable may also be called into question. The Third Circuit in *Hatco* did seem to presume that all restitutionary remedies are equitable. But the Supreme Court has since clarified that restitution may be both legal and equitable. *See Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). This matter is addressed at greater length below in Part VIII.

13. Section 2415(a) does contain some apparent contradictions. A contract implied in law provides a restitutional remedy. A restitutional remedy is measured by the defendant's gain rather than the plaintiff's loss. Damages, conversely, are measured by the plaintiff's loss rather than the defendant's gain. Thus, a "contract implied in law for money damages" is a contradiction in terms from a strictly academic point of view because it mixes up damages and restitution, which are (in theory) two different things. But Congress decided that § 2415(a) includes such a chimera. Therefore, it must exist. The most sensible interpretation is that § 2415(a) extends to money judgments for a contract implied in law. Any theoretical inconsistencies diminish in importance where, as here, the measure of restitution and damages would be identical: In paying to remediate the pollution, the United State's lost as much as the defendants gained by *not* paying to remediate.

Uniform Contribution Among Tortfeasors Act (UCATA). 42 Pa.C.S. § 8324. The UCATA establishes that "[t]he right of contribution exists among joint tort-feasors." § 8324(a).

### A. Contribution Claim: Contract Implied In Law

At first glance, it seems that UCATA claims could fall under § 2415(b), which extends the three year limitations period to actions "founded upon a tort". There is no need for the action limited by § 2415(b) to be between the injured party and the tortfeasor directly. In *United States v. Gera,* a military servicemember was injured in a car accident and the United States paid for his medical care. 409 F.2d 117 (3d Cir.1969). The United States sued the tortfeasor driving the car that injured the service member under the Medical Care Recovery Act (MCRA), which gives the United States the right to recover medical costs it has paid out. The Third Circuit rejected the view that the MCRA action was "founded upon a statute (The Medical Care Recovery Act)', and not upon a tort" under § 2415(b). *Id.* at 118. The court rested its decision on the fact that United States had an independent right to recover the funds from the tortfeasor under the MCRA. That the tortfeasor was not actually being held liable for the tort itself, but rather for a violation of the MCRA, was irrelevant. *Id.* at 120.

Like MCRA actions, the UCATA does not directly litigate liability for tort between the injured party and the tortfeasor. Instead, it gives the joint tortfeasors the independent right to recovery where there is a tort in the background. Without a tort, there would be no UCATA claim. However, a claim for contribution under the UCATA is better seen as a restitutionary claim to prevent unjust enrichment of the tortfeasors who have not yet paid their share. "[T]he right of contribution is a quasi-contractual right arising by reason of an implied engagement of each to help bear the common burden." *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 375 (1951). *See also Lang Tendons, Inc. v. Great Southwest Marketing Co., Inc.,* 1994 WL 159014, *3 (E.D.Pa.1994), *W.D. Rubright Co. v. International Harvester Co.,* 358 F.Supp. 1388, 1392 (W.D.Pa.1973); Dobbs § 4.1(2), at 347 n. 17 and accompanying text, and § 4.3(4), at 408; Restatement (Third) of Restitution and Unjust Enrichment § 25; Andrew Kull, *The Source of Liability in Indemnity and Contribution,* 36 Loy. L.A. L.Rev. 927, 927 (2003) ("[A] claim to indemnity or contribution is almost universally treated for limitations purposes as an action in quasi contract [i.e., contract implied in law].") As such, like the cost recovery claim, the contribution claim is for a contract implied in law. As a contract implied in law, it is subject to the six year statute of limitations of § 2415(a).

### B. Contribution Claim: Money Damages

For the same reasons that a cost recovery claim is for "money damages" under § 2415(a), so must a contribution claim be for "money damages." As explained above with respect to cost recovery, a contract implied in law based on unjust enrichment has no other possible kind of monetary relief available than the kind sought here: restitution of the amount by which the defendant would be unjustly enriched. In order to give effect to § 2415(a), the term "money damages" must include the relief sought by the United States for contribution.

### VIII. Money Damages for Contracts Implied In Law: Law v. Equity

Independent principles of statutory construction compel the conclusion that both

the claims for cost recovery and contribution are for "money damages" under § 2415(a). However, the question of law versus equity deserves further discussion. The United States contends that "money damages" means a remedy at law rather than an equitable remedy, and argues that under Third Circuit precedent both contribution and cost recovery are for equitable relief.

To begin, neither cost recovery nor contribution is necessarily "historically equitable." [14] Quasi-contract (i.e., contract implied in law) "was tied to the action in assumpsit and to the limited judicial powers of the law judges." Dobbs § 4.2(3), at 386. Although it has "been associated with equity in the broader sense," quasi-contract was historically granted by law courts. Emily Sherwin, *Restitution and Equity: An Analysis of the Principle of Unjust Enrichment,* 79 Tex. L.Rev.2083, 2086–87 (2001).

More importantly, the meaning of "damages" in § 2415 does not turn on the distinction between equity and law in the eighteenth century. Instead, "damages" should be interpreted with reference to what Congress intended when it drafted § 2415 in 1966.[15] Thus, although the Third Circuit determined that CERCLA cost recovery and restitution are both "equitable" for Seventh Amendment purposes in *Hatco,* that determination does not conclude ultimate question of whether they can be for "money damages" under § 2415.

In a case refusing to apply § 2415 to mortgage foreclosure, the Third Circuit did state that "foreclosure was a historically equitable remedy. Since § 2415(a) speaks in terms of 'damages,' a traditionally legal remedy, foreclosure actions are not encompassed." *UMLIC VP LLC v. Matthias,* 364 F.3d 125, 134 (3d Cir.2004). Read too quickly, that statement appears to define "money damages" as "historically legal." But the *UMLIC* court did not find that all claims that are *not* "traditionally legal" are excluded from § 2415. Instead, the court simply found that one kind of "historically equitable remedy," mortgage foreclosure, is not included under "money damages."

The Supreme Court briefly addressed the meaning of "money damages" in § 2415 in *BP America,* noting that "the term 'damages' is generally used to mean 'pecuniary compensation or indemnity, which may be recovered *in the courts.*' Black's 466." *BP America Production Co. v. Burton,* —— U.S. ——, ——, 127 S.Ct. 638, 644, 166 L.Ed.2d 494 (2006) (emphasis in original) (citing *Black's Law Dictionary* ). However, *BP America* turned on the meaning of "action" in § 2415, not "money damages." The Supreme Court did not determine whether the relief sought by the United States (royalty payments for oil and gas leases) constituted "damages," nor whether "damages" are legal rather than equitable relief. The Court touched on "money damages" only to support its view that § 2415 covers cases filed in court, but not administrative matters. It quoted from Black's to emphasize its view that an "action" must be filed "in court": According to Black's, money damages are obtained "in court."

---

14. As noted above, although the *Hatco* court assumed that cost recovery is equitable simply because it involves restitution, that reasoning has been called into question by the Supreme Court's later clarification that not all restitution is equitable. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

15. The emphasis on equity versus law is appropriate in the Seventh Amendment jury right context, which is not an issue addressed in this opinion, although it has been raised by the parties in other motions.

At the same time, that the Supreme Court's quoted definition of "money damages" includes "indemnity," which Professor Dobbs classes as "Restitution in Equity." *See* Dobbs, § 4.3(4), at 408. This also suggests that the dividing line is not between law and equity.

The Supreme Court has also addressed the meaning of "money damages" in the context of the Administrative Procedure Act (APA), but without drawing the line between law and equity. Section 702 gives district courts jurisdiction to hear APA claims for "other than money damages." 5 U.S.C. § 702. However, not all monetary remedies are excluded: the Supreme Court narrowly construed "money damages" and refused to draw the line between equity and legal remedies:

> [T]he crucial question under § 702 is not whether a particular claim for relief is "equitable" (a term found nowhere in § 702), but rather what Congress meant by "other than money damages" (the precise terms of § 702).

*Department of Army v. Blue Fox, Inc.* 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999).

Following the model of *BP America* and *Blue Fox,* what Congress meant by "money damages" rather than the division between law and equity must guide the interpretation of § 2415. The legislative history of § 2415 indicates that the term "money damages" was intended to exempt *injunctive relief* from the statute of limitations:

> Suits for injunction and other extraordinary relief are not covered by this bill nor by any existing statute. The testimony presented at the hearing on the bill emphasized that a statute of limitations is inconsistent with injunctive relief where prompt action may be essential to accomplish the purpose of the injunction. An injunction is sought when prompt action is essential to prevent irreparable harm, or is required to forestall a significant change in position. The Government must decide to seek an injunction at once or not at all. It also must be recognized that the Government brings the injunction in order to protect and defend Government activities and programs. It simply is not sensible to diminish the power of the Government to utilize an injunction to accomplish these ends.

Sen. Rep. No. 89–1328, 1966 U.S.C.C.A.N. 2502, 2509 (1966). *See also* Sidney B. Jacoby, *The 89th Congress and Government Litigation,* 67 Colum. L.Rev. 1212, 1229 (1967). Nothing in the Senate Report indicates that it would exclude certain kinds of monetary relief because it was viewed as an equitable remedy. Instead, the legislative history indicates that Congress sought to place the United States on equal footing as private plaintiffs and defendants in commercial cases.

The bill that became § 2415 was introduced as a package of legislation promoted by the Department of Justice that included a bill amending the Federal Tort Claims Act. The purpose was to "improve claims procedures and to provide a more balanced and fair treatment of litigants in civil actions involving the Government":

> The bill, H.R. 13652 [the statute of limitations bill] is one of three bills introduced in accordance with the recommendations of an executive communication from the Department of Justice. These bills, H.R. 13650 [the bill to amend the Federal Tort Claims Act], H.R. 13651, and H.R. 13652, have the common purpose of improving existing procedure for the disposition of monetary claims by and against the Government. These subjects now comprise the bulk of civil litigation of the Government. The three bills just mentioned, along with H.R. 14182, providing for payment of costs by

the United States when judgment is entered against it, are intended to improve claims procedures and to provide a more balanced and fair treatment of litigants in civil actions involving the Government. The committee has considered these bills as a group. Their enactment will reduce unnecessary litigation and court congestion, speed up meritorious settlements and cut down on unproductive paperwork. At the same time, the private litigants can be assured of a more fair and balanced treatment when dealing with the Government.

The bill H.R. 13652 [the statute of limitations bill] was the subject of a hearing on April 6, 1966. At that hearing it was noted that the Government litigation covered by the bill arises out of activity which is very similar to commercial activity. Many of the contract and tort claims asserted by the Government are almost indistinguishable from claims made by private individuals against the Government. Therefore it is only right that the law should provide a period of times within which the Government must bring suit on claims just as it now does as to claims of private individuals. The committee agrees that the equality of treatment in this regard provided by this bill is required by modern standards of fairness and equity.

Sen. Rep. 89–1328, 1966 U.S.C.C.A.N. 2502, 2503. Thus, the statute of limitations was intended to create a degree of reciprocity between private plaintiffs suing the government under the Federal Tort Claims Act, and the United States suing private plaintiffs under other statutes. In this light, it is persuasive that the Third Circuit has held the United States as a

defendant under the Federal Tort Claims Act liable for contribution, a decision that assumed "money damages" under the Federal Tort Claims Act includes contribution. *See, e.g., Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 191 (3d Cir.2000). In *Gould,* as here, the underlying tort was a violation of state environmental law.[16]

In conclusion, nothing in the language or legislative history of § 2415 suggests that the term "money damages" was meant to instill a strict division between law and equity in the statute.

## IX. Accrual

▇▇▇▇ Under § 2415, the statute of limitations begins to run "after the right of action accrues." That time is tolled for the amount of time "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act." 28 U.S.C. § 2416(c). The United States only need know the "very essence of the right of action" in order to trigger the statute of limitations; it need not know every detail. *United States v. Kass* 740 F.2d 1493, 1497 (11th Cir.1984).

Some courts of appeals have held that the statute of limitations in environmental cost recovery cases is tolled until the cleanup is completed. *See, e.g., U.S. v. Barge Shamrock,* 635 F.2d 1108, 1110 (4th Cir.1980). But under § 2416(c) the "facts material to the right of action" are known when the underlying injury is known, not when the full extent of the retrospective and prospective relief can be measured. For tolling purposes in this case, the "fact[ ] material to the right of action" is the date the United States first knew it

---

**16.** This is not to suggest that the Federal Tort Claims Act and the federal statute of limitations are mirror images, requiring that the term "damages" be interpreted identically. But the legislative history shows that the statute of limitations was intended to be part of a

package of laws that would equalize the United State's rights in civil lawsuits with private parties' rights. As such, it makes sense that the terms "money damages" in the Federal Tort Claims Act and in § 2415 would be coextensive.

was going to pay some amount of money to clean up the defendants' pollution, not when it knew its total costs.

That the United States requests prospective relief for future remediation costs also belies the view that the statute of limitations must be tolled until the extent of all harms has manifest. The amount of future costs can be determined by experts' predictions or the establishment of a fund for future costs, which is presumably the type of relief the United States would be seeking here. The existence of *some* costs is indeed a "fact[ ] material to the right of action," but the *total* amount of costs is a fact to be determined at trial. Any other result would allow the United States to extend the statute of limitations at its own option, depending on how long it chose to take to clean up the pollution.

The original Complaint and the First Amended Complaint leave no doubt that the United States had reason to believe that the Point Breeze refinery was a source of the pollution possibly as early as 1988, ¶ 18, and certainly no later than 1996 when it and began to remediate the pollution, ¶ 32, and entered into a tolling agreement with defendant Sunoco with respect to the pollution. U.S. Mem. at 6 (docket entry # 46). This claim was not filed against defendant AR until 2005.

Although the United States argues that adjudication on the time bar should wait until the close of discovery, there are no possible set of facts consistent with its own Complaint and First Amended Complaint that would demonstrate that its Tank Act claims against AR are not time barred. AR has not demonstrated, however, whether the UCATA claim has accrued and is time barred. I will deny AR's motion on the statute of limitations for the UCATA claim without prejudice with leave to refile at a later date.

Sunoco has argued more generally that both the legal and factual aspects of the statute of limitations question is not ready for review. I will reserve my decision on whether the claims against Sunoco are time barred until a later date. According to Sunoco, it is also premature to address the statute of limitations issues at all. Sunoco argues that United States's motion for an order on the applicable law, but not an actual application to the facts and ruling on whether their claims are time barred, is tantamount to a request for an advisory opinion. It is not premature or advisory to settle the purely legal question of which statute of limitations applies. The matter is a live, threshold issue between these parties that can be fully adjudicated at this point in the litigation. There can be no question that AR's motion for partial summary judgment on the statute of limitations is proper. Nor is the United States's own "Motion for Order" improper.

## X. Conclusion

The United States and AR's motions are granted in part and denied in part. The United States' Tank Act claim for diminution of property value is a tort claim for money damages under § 2415(b) and is subject to the three year statute of limitations. The Tank Act claims for cost recovery and the UCATA claim for contribution are contracts implied in law under § 2415(a) and are subject to the six year statute of limitations. The United States is time barred from asserting both of its Tank Act claims against AR. AR may refile its motion on the statute of limitations for the UCATA claims at a later date. Whether the Tank Act and UCATA claims against Sunoco are time barred is not reached in this opinion.